IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 8, 2009  Session

## MATHEWS PARTNERS, LLC, D/B/A NAI NASHVILLE v. LUCIANNA LEMME

Appeal from the Chancery Court for Wilson County
No. 06-510      Charles K. Smith, Chancellor

No. M2008-01036-COA-R3-CV - Filed October 2, 2009

Commercial real estate broker brought action against seller of property seeking commission following the sale of the property to buyers allegedly introduced to the seller by the broker during the term of the listing agreement.  Upon cross motions for summary judgment, the trial court granted summary judgment to the seller finding the listing agreement was unenforceable because there was no meeting of the minds and a lack of mutual assent to the terms of the agreement.  Broker appeals and finding error, we reverse and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S. and FRANK G. CLEMENT, JR., J., joined.

Todd E. Panther, Nashville, Tennessee, for the appellant, Mathews Partners, LLC, d/b/a NAI Nashville.

Brody N. Kane and Angel P. Kane, Lebanon, Tennessee, for the appellee, Lucianna Lemme.

**OPINION**

## I.  Background[1]

This case stems from the sale of commercial real estate located at 541 Mt. Juliet Road, Mt. Juliet, Tennessee ("the property") owned by Ms. Lucianna Lemme, the Appellee.  On December 14, 2004, Ms. Lemme signed an Exclusive Sales Listing Agreement with Mathews Partners d/b/a NAI Nashville ("NAI"), the Appellant, to list and market the property for sale from December 15, 2004

---

[1] Unless otherwise indicated, the recitation of facts is taken from the materials filed in support of or opposition to the parties' motions for summary judgment and are not contested.

until midnight on June 30, 2005.  The listing agreement set the sales price for the property at $889,000.00 as well as provided the following terms:

> 2.  Owner agrees to pay Broker a sales commission in accordance with Broker's Schedule of Sale Commissions ("the Schedule"), a copy of which is executed by Owner, attached hereto and hereby made a part hereof.  This commission shall be earned and paid for services rendered if, during the Term: (a) A Purchaser is procured (by Broker, Owner, or anyone else) who is ready, willing and able to purchase the Property at the price and on the terms above stated, or on any other price and terms agreeable to Owner; (b) Any contract for the sale of the Property is entered into by Owner; or (c) Owner contributes or conveys the Property, or any interest therein, to a partnership, joint venture, or other business entity, or transfers an interest in any entity which has an ownership interest in the Property in lieu of a sale of the Property.
>
> . . .
>
> 4.  Owner further agrees that Owner shall pay Broker the aforementioned commission if, within 90 days after the expiration of the Term, the Property is sold to, or Owner enters into a contract of sale for the Property with, or negotiations commence and thereafter continue leading to the sale of the Property to anyone introduced to the property during the period of this exclusive [sic].  Broker agrees to submit a list of such persons or entities to Owner no later than 15 business days following the expiration of the Term, provided, however, if Broker has submitted a written offer then it shall not be necessary to include the offeror's name on the list.
>
> 5.  Owner further agrees that in the event a sale of the Property is entered into during the term, or during the period set forth in Section "4" above with a person or entity as described therein, owner shall pay broker a sales commission in accordance with the schedule.

The Schedule of Sale Commissions ("the Schedule") was also executed by Ms. Lemme on December 14, 2004, and established that NAI's commission "shall be 6% of the gross sales price."

The next day, Mr. Hendrixson met with NAI's marketing department and developed a sales plan and marketing materials that included printing flyers, posting a large sign at the property, and listing the property on various marketing web sites.  Mr. Hendrixson made several phone calls to people he thought might be interested in this type of property and showed the property to several other commercial real estate agents including some of his co-agents at NAI.

During the term of the listing agreement, Mr. Hendrixson procured several potential buyers, four of whom made written offers.  The first offer, received on February 8, 2005, was for $700,000.00, which was raised to $725,000.00 after Ms. Lemme counter-offered at $850,000.00; the negotiations, however, did not continue after that.  The second offer was received on March 28,

though the exact price offered is not in the record; Ms. Lemme instructed Mr. Hendrixson to counter-offer at the full price, $889,000.00.

The last two offers came in June 2005. Mr. Hendrixson received offers from two different groups of buyers. The first was received on June 21, from a group of dentists, DEJ Partners, for $750,000.00. The second was received on June 23, from a group of individuals, Steven R. Griffith, Terry and Jennifer Harris, and Robert Cooper, for $715,000.00. The second group was represented by an agent, Ms. Rita Anderson of Anderson Commercial Brokerage.

On June 25, Mr. Hendrixson met with Bill Thompson,[2] Ms. Lemme's ex-husband, to discuss both offers. Mr. Thompson gave Mr. Hendrixson an "information letter" signed by Ms. Lemme, which Mr. Thompson asked Mr. Hendrixson to send to both DEJ Partners and Ms. Anderson in lieu of counter-offers. Mr. Hendrixson sent the letters to the prospective buyers and received responses from both. On June 27, Mr. Hendrixson received a second offer from DEJ Partners for $800,000.00 and a second offer, in the form of a proposed sales contract, from Ms. Anderson's clients for $750,000.00. The proposed sales contract prepared by Ms. Anderson listed as the buyers Steven R. Griffith, Terry and Jennifer Harris, and Robert Cooper and provided for a total brokerage commission of 6% to be paid by seller, Ms. Lemme, and split equally between the buyer's agent, Ms. Anderson, and the seller's agent, Mr. Hendrixson.[3] Mr. Hendrixson gave Mr. Thompson both of the offers.

Despite the expiration of the listing agreement term on June 30, Mr. Hendrixson continued to work for the next several days to get a deal done with DEJ Partners, the highest bidder at the time. Mr. Hendrixson went back to DEJ Partners and asked if they would raise their bid to $835,000.00. DEJ Partners, however, refused to raise their bid above $800,000.00 and Mr. Thompson refused to accept anything less than $835,000.00.

On July 6, Mr. Hendrixson went out of town for a previously scheduled family vacation. Prior to leaving, Mr. Hendrixson met with NAI's managing broker, Nate Greene, and provided him with all the relevant information regarding the offers and negotiations around the sale of Ms. Lemme's property. When Mr. Thompson learned that Mr. Hendrixson was out of town for a few days, he became angry and told Mr. Greene that NAI should remove its sign from the property as well as remove the property from NAI's listings. When Mr. Hendrixson returned from his trip, Ms. Anderson contacted him about a third offer from her clients. Mr. Hendrixson told Ms. Anderson that NAI no longer had the listing for Ms. Lemme's property and that she should contact Ms. Lemme directly, which she did.

---

[2] Bill Thompson is Ms. Lemme's ex-husband and a tenant of hers at the antique store. Ms. Lemme told Mr. Hendrixson that she was the owner and made all final decisions about the property, but that he could discuss any offers for the purchase of the property with Mr. Thompson because she often sought his advice.

[3] Mr. Thompson told Mr. Hendrixson that Ms. Lemme would not go through with the sale unless the sale netted $790,000.00. In order to facilitate completion of a sale to the highest bidder, Mr. Hendrixson offered to lower his commission to 3%.

On July 14, Ms. Lemme signed a contract to sell the property to Steven R. Griffith, Terry and Jennifer Harris, and Robert Cooper. The sales contract listed Ms. Anderson as the buyers' real estate agent and Ms. Lemme as the seller's real estate agent; it also provided that the seller was to pay a 3% brokerage commission to Ms. Anderson with no commission for Ms. Lemme.

On August 31, the sale of the property closed. The registered deed stated that the new owner of the property was Paddock Center LLC. Shortly thereafter, Mr. Hendrixson saw Steven R. Griffith at a real estate auction in Hermitage, Tennessee and learned from Mr. Griffith that Mr. Griffith's group had purchased the property.

On November 21, 2005, NAI filed the present action seeking to enforce the terms of the listing agreement and collect a 6 percent brokerage commission along with pre-judgment interest and attorney's fees as provided for in the agreement. Ms. Lemme's Answer denied most of the allegations of the complaint and asserted various affirmative defenses including that the listing agreement was void and unenforceable, that the buyer of the property "was not the same buyer as previously presented" by Mr. Hendrixson during the term of the agreement, that NAI breached its fiduciary duty to Ms. Lemme, and that, if the listing agreement was enforceable and the buyer was the same, then NAI would be entitled to a 3 percent, not 6 percent, commission. Following discovery, Ms. Lemme filed a motion for summary judgment, memorandum in support and a statement of undisputed facts. NAI subsequently filed a response and its own motion for summary judgment, memorandum in support and its own statement of undisputed facts. Ms. Lemme filed a response.

Following a hearing on April 2, 2008, the trial court denied NAI's motion finding that at least two material facts were in dispute: (1) whether the actual buyers were the same as the buyers introduced to Ms. Lemme by Mr. Hendrixson in June 2005, and (2) whether, if successful, NAI is entitled to a commission of 3 or 6 percent. The trial court found with respect to Ms. Lemme's motion, however, that no facts were in dispute and granted her motion for summary judgment. The trial court found that the agreement was unenforceable because neither Mr. Hendrixson nor Ms. Lemme knew or discussed the terms of the agreement prior to signing it and, as such, there was no meeting of the minds and no mutual assent to the terms as required to form a binding contract.

NAI appeals contending that the trial court erred in granting Ms. Lemme's summary judgment motion and in denying its motion.

## II. Analysis

### Standard of Review

The issues were resolved in the trial court upon summary judgment. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. V. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court must make a fresh determination that the

requirements of Tenn. R. Civ. P. 56 have been satisfied.  *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977).

Summary judgment is appropriate where a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law.  Tenn. R. Civ. P. 56.04; *Stoval*, 113 S.W.3d 721.  To be entitled to summary judgment, the moving party must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial.  *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008); *see also McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.5.  The Tennessee Supreme Court has explained that "[b]oth methods require something more than an assertion that the nonmoving party has no evidence," *Hannan*, 270 S.W.3d at 8 (citing *Byrd*, 847 S.W.2d at 215), or presenting evidence that merely "raises doubts about the nonmoving party's ability to prove his or her claim." *Id.* (citing *McCarley*, 960 S.W.2d at 588).  The moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that "tends to disprove an essential factual claim made by the nonmoving party." *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76, 84  (Tenn. 2008); *see Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004).  "If the moving party is unable to make the required showing, then its motion for summary judgment will fail." *Id.*; *Byrd*, 847 S.W.2d at 215.

If, however, "the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Martin*,  271 S.W.3d at 84 (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215).  This may be accomplished by:  (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06. *Id.* (citing *McCarley* , 960 S.W.2d at 588; *accord Byrd*, 847 S.W.2d at 215 n.6.

When reviewing the evidence, we first determine whether factual disputes exist.  "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993).  We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruis*, 90 S.W.3d 692, 695 (Tenn. 2002).  If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).  A disputed fact presents a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Byrd*, 847 S.W.2d at 215.  The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party. *McCarley*, 960 S.W.2d at 588.

In this case, both parties filed motions for summary judgment. In her motion for summary judgment, Ms. Lemme argued that she was entitled to summary judgment, contending that the following were undisputed material facts and that such facts entitled her to relief as a matter of law:

1. Mr. Hendrixson did not leave a copy of the Exclusive Sales Listing Agreement with Ms. Lemme.
2. Mr. Hendrixson never reviewed the agreement with her, particularly paragraphs 4 and 5 on which NAI based its lawsuit against Ms. Lemme.
3. NAI waived its right to any commission when Mr. Hendrixson told Ms. Anderson in mid-July that NAI no longer represented Ms. Lemme and that Ms. Anderson should take any purchase offers directly to Ms. Lemme.
4. NAI further waived[4] its right to any commission when Mr. Hendrixson, knowing that Ms. Anderson's sales contract might be signed within the 90 day period provided for in paragraph 4, "purposefully chose not to advise Ms. Lemme of Paragraphs 4 and 5 of her listing agreement and his intention to seek commission from this sale, if she accepted this offer."

(Emphasis in original).

Ms. Lemme further contended in her motion that "by and through the actions and inactions of Radley Hendrixson, the Plaintiff can no longer claim any commission allegedly due under its Exclusive Sales Listing Agreement." Ms. Lemme supported her motion by a statement of undisputed facts. In response, NAI admitted that there were no material facts in dispute with respect to Ms. Lemme's motion, but contended that the undisputed facts did not render the listing agreement unenforceable or result in a waiver of its commission.

NAI subsequently moved for summary judgment contending that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. NAI contended that given the unambiguous terms of paragraph 4 of the contract and the fact that Ms. Lemme admitted that (1) NAI provided her with an offer from prospective buyers during the term of the agreement and (2) within 90 days after the expiration of the agreement, Ms. Lemme entered into a contract for the sale of the property with the same buyers, NAI was entitled to $50,400.00 (representing 6 percent of the gross sales price) as commission from the sale of the property plus prejudgment interest and attorney's fees, a total of $72,817.30. NAI's motion was supported by a statement of undisputed facts as well as the following materials:

1. Deposition of Radley Hendrixson;
2. Deposition of Lucianna Lemme;

---

[4] Ms. Lemme asserts that Mr. Hendrixson's conduct constitutes a waiver of NAI's commission, however, the substance of her argument is that NAI is not entitled to its commission because its agent, Mr. Hendrixson, breached his fiduciary duty to Ms. Lemme as her real estate agent. Consequently, we will address the issue below as a breach of fiduciary duty rather than "waiver."

3. The Plaintiff's Responses to Defendant's First Set of Interrogatories;
4. February 16, 2006 affidavit of Nate Greene;
5. Affidavit of Steve Griffith;[5]
6. Plaintiff's Response to the Defendant's Statement of Undisputed Material Facts;
7. Defendant's Statement of Undisputed Facts;
8. The Plaintiff's Memorandum of Law in Opposition to the Defendant's Motion for Summary Judgment and in Support of its Motion for Summary Judgment; and
9. The entire record.

In response, Ms. Lemme asserted that NAI's motion should be denied "because there are genuine issues of material fact in dispute as to the validity and enforceability of the contract entered into between the parties." Ms. Lemme contended in her reply brief in opposition to NAI's summary judgment motion that NAI's motion should not be granted because:

[T]here still remain genuine issues of [sic] dispute of the following material facts:

1) Whether agent performed the services he was required to perform under the Exclusive Sales Listing Agreement in order to earn his commission? [sic] . . .
2) Whether the agent breached certain fiduciary duties owed to Defendant thereby not entitling him to a commission[.] . . .
3) Whether the Buyers who eventually purchased the property, Paddock Center LLC were in fact the same Buyers who initially made an offer in June of 2005[.] . . .
4) Whether the contract should be enforced as written due to a mutual mistake of fact between Plaintiff and Defendant[.] . . .
5) If the Court finds that the contract is valid and enforceable and there has not been a waiver of commissions, then whether it would be inequitable for Plaintiff to earn a 6% commission[.] . . .
6) Whether the fact that Radley Hendrixson signed the Exclusive Sales Listing Agreement as *broker* although he was not a broker was a fraud voiding the contract[.] . . .
7) Whether the failure of Defendant receiving a copy of the contract renders it unenforceable[.] . . . .

(Emphasis in original).

As a threshold matter, before examining the merits of the parties' respective motions, we will examine the enforceability of the listing agreement.

_____

[5] For reasons unknown, this document is not in the record.

Enforceability of the Exclusive Sales Listing Agreement

Ms. Lemme contends that, because neither she nor Mr. Hendrixson discussed, agreed to or even knew the terms provided for in paragraphs 4 and 5 of the listing agreement at the time they signed, the agreement is unenforceable. NAI responds that the agreement is binding and enforceable despite the failure of both Mr. Hendrixson and Ms. Lemme to read the contract prior to signing it because it was a signed, unambiguous written agreement.

To be enforced, a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite." *Staubach Retail Services-Southeast, Inc. v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005) (citing *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001). "In determining mutuality of assent, courts must apply an objective standard based upon the parties' manifestations." *Id.* (citing *T.R. Mills Contractors, Inc. V. WRH Enters.*, LLC, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002).

Here, Ms. Lemme, the party to be bound, signed a written agreement and, therefore, we begin with the presumption that it contained her intentions and that she assented to be bound by those terms. *See* Tenn. Code Ann.§ 47-50-112(a)(contracts signed by the party to be bound shall be enforced as written, subject to statutory and common law defenses); *Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 676 (Tenn. Ct. App. 2007) *perm. appeal den.* (Aug. 13, 2007). Ms. Lemme claims, however, that because she and Mr. Hendrixson did not discuss the terms, read the contract, or otherwise know what the terms in paragraphs 4 and 5 provided that there was no meeting of the minds or mutual assent and, consequently, no enforceable contract.

Tennessee has strong public policy in favor of upholding contracts. *St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948, 951 (Tenn. Ct. App. 1986); *Ballard v. North American Life & Casualty*, 667 S.W.2d 79, 82 (Tenn. Ct. App. 1983); *AmeriGas Propane, Inc. v. Crook*, 844 F.Supp. 379, 390 (M.D. Tenn. 1993). Written contracts would be worthless if the law allowed a party to enter into a contract and then seek to avoid performance because he or she did not read the agreement or know its contents. *Moody*, 237 S.W.3d at 676 (citing *Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993). Absent fraud or duress, the law generally holds parties responsible for what they sign. *Id.*; *see Teague Bros. v. Martin & Bayley, Inc.*, 750 S.W.2d 152, 158 (Tenn. Ct. App. 1987).

In this case, the listing agreement consisted of ten paragraphs on two pages and the paragraphs at issue, 4 and 5, were on the first page; the agreement also contained a half page addendum, the Schedule of Sale Commissions, with a separate signature line. Ms. Lemme signed both the listing agreement and the Schedule. Mr. Hendrixson brought the documents to Ms. Lemme at the property and, while he did not read them to her or otherwise explain the provisions, he gave Ms. Lemme the documents, which she took to her office in the back of the property for approximately 15 to 20 minutes. She returned the documents to Mr. Hendrixson signed and did not ask him any questions about their contents. Ms. Lemme testified that she "briefly looked at it"

because "I figured, well, it's probably the same standard thing that everybody else has. Since I was a realtor and I had already read the contracts from before, I didn't bother looking at the 90-day thing after that, of course. But I figured, hey, he's a nice guy."

We find Ms. Lemme's professed lack of awareness of the terms of the written agreement irrelevant because, as the party to be bound, she had an obligation to read the agreement before signing it and is thus charged with the knowledge of the terms therein. Ms. Lemme, a licensed real estate agent familiar with these types of contracts, had the opportunity to read the listing agreement, but she chose not to at her own peril. *See Moody*, 237 S.W.3d at 676 ("One who signs a contract cannot later plead ignorance of its contents if there was an opportunity to read it before signing."); *see also Solomon v. First American Nat'l Bank*, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989).

Ms. Lemme argues that, despite the fact that she failed to read it before signing, the agreement is nevertheless unenforceable because it was the result of a "mutual mistake as neither she nor Radley Hendrixson knew of the terms or agreed to the terms of Paragraph 4 or 5, before signing the agreement" and that she "was not negligent as her agent [Mr. Hendrixson] failed to disclose this provision to her and she <u>never</u> agreed to it." (Emphasis in original). In support of this contention Ms. Lemme cites two cases, *Pelot, III v. Cakmes*, No. E1999-02550-COA-R3-CV, 2000 WL 116046 (Tenn. Ct. App. Jan. 31, 2000), and *McNabb v. Gray*, No. E2003-02674-COA-R3-CV, 2004 WL 2190966 (Tenn. Ct. App. Sept. 30, 2004). We do not find that either case has applicability here.

In *Pelot*, Dr. Pelot sought relief from a written contract that he signed that modified a previous agreement between the parties. Dr. Cakmes had presented a letter addressed to Dr. Cakmes' banker to Dr. Pelot during a busy time of day. *Pelot, III v. Cakmes*, 2000 WL 116046, at *5. Dr. Cakmes led Dr. Pelot to believe that the letter was about obtaining a loan and required Dr. Pelot's signature as Dr. Cakmes business partner. *Id.* The two did not discuss the contents of the letter or whether Dr. Pelot would agree to the modification of their prior agreement that the letter actually contained. *Id.* The court found there was "proof that Dr. Cakmes knowingly, or without belief in its truth, or recklessly, whether it be true or false, made a false representation to Dr. Pelot that this was a routine letter to his banker about obtaining a loan." *Id.* The *Pelot* court found that the contract was unenforceable principally because Dr. Cakmes misrepresented the contents of the contract. *Id.* Contrary to *Pelot*, there is nothing in the record here showing that Mr. Hendrixson misled Ms. Lemme as to the nature or content of the listing agreement or the Schedule or that she did not have sufficient time to review the documents before signing them.

In *McNabb*, the court set aside a warranty deed having found that there was "no meeting of the minds between the parties." *McNabb v. Gray*, 2004 WL 2190966, at *3. Crucial to the *McNabb* court's determination, however, was the fact that it was "impossible to ascertain the parties' duties to one another under the contract" because there was no consistency between the testimony of the grantor, the testimony of the grantee or the wording of the deed as to what the terms were supposed to be. *Id.* Here, the record does not show that Ms. Lemme and Mr. Hendrixson had agreed on one set of terms that were then not reflected in the written agreement. There was, in fact, no

disagreement as to the terms since the terms were not discussed. Mr. Hendrixson presented Ms. Lemme with NAI's standard exclusive sales listing agreement, which constituted a written offer. Ms. Lemme then had a duty to read the document before signing it, the outward manifestation of her intent to be bound by the terms of the agreement.

We find the Exclusive Sales Listing Agreement to be binding on the parties as written. We will now examine the merits of the parties' respective summary judgment motions in light of our finding the listing agreement enforceable.

## Ms. Lemme's Motion for Summary Judgment

Ms. Lemme moved for summary judgment contending that her motion should be granted because NAI is not entitled to its commission under the listing agreement due to the conduct of its agent, Radley Hendrixson. Specifically, Ms. Lemme contended that Mr. Hendrixson waived NAI's commission, or, if he did not waive the commission, NAI is nonetheless not entitled to its commission because Mr. Hendrixson breached his fiduciary duty to Ms. Lemme. NAI does not dispute any of the facts on which Ms. Lemme bases her motion, but contends that the facts do not entitle Ms. Lemme to judgment as a matter of law. We will address Ms. Lemme's arguments in turn.

*i. Waiver*

Ms. Lemme contends that NAI waived its right to any commission from the sale of the property by the conduct of its agent, Mr. Hendrixson, when Mr. Hendrixson told Ms. Anderson in mid-July that NAI no longer listed Ms. Lemme's property and, as a result, Ms. Anderson should take any offers she had from her clients directly to Ms. Lemme. NAI contends that such action did not constitute a waiver of its commission since the agreement had expired by its express terms on June 30, 2005.

Waiver is a "voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage," which, but for such waiver, someone would have enjoyed. *Baird v. Fidelity-Phenix Fire Ins. Co.*, 178 Tenn. 653, 162 S.W.2d 384, 389 (1942). Waiver "may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct; or by so neglecting and failing to act, as to induce a belief that it was [the party's] intention and purpose to waive." *Id.* The acts or course of conduct "must be clear, unequivocal and decisive acts of the party or an act which shows determination not to have the benefit intended in order to constitute a waiver." *Knoxville Rod & Bearing, Inc. v. Bettis Corp. of Knoxville, Inc.*, 672 S.W.2d 203, 208 (Tenn. Ct. App. 1983) (citing *Gitter v. Tenn. Farmers Mut. Ins. Co.*, 450 S.W.2d 780, 784 (Tenn. Ct. App. 1969)).

Ms. Lemme cites the case of *Prudential Botts v. Gupton*, 1994 WL 398826 (Tenn. Ct. App. Aug. 1, 1994), as support for her contention that Mr. Hendrixson waived NAI's commission by his conduct. We do not find, however, that *Prudential Botts* has any applicability to the facts here on the issue of waiver.

The *Prudential Botts* court found that the seller's broker, Mr. Botts, waived his right to his brokerage commission under an executed listing agreement when he gave the buyer's broker permission, while the listing agreement was still in effect, to take an offer directly to the seller knowing that the proposed sales contract did not include his commission. *Prudential Botts*, 1994 WL 398826, at * 4. Critical to the court's decision was the fact that Mr. Botts knew that the sales contract did not reflect Botts' portion of the commission and he knew that the seller would not have accepted the offer if Botts claimed his commission in the sales contract; consequently, when Mr. Botts authorized the buyer's agent to present a sales contract with no commission listed for Botts, Mr. Botts waived his right to any commission on the sale of the property. *Id.* at *5.

The primary distinction between this case and *Prudential Botts* with respect to waiver is the fact that the listing agreement between NAI and Ms. Lemme had already expired when Mr. Hendrixson told Ms. Anderson to take her clients' offer directly to Ms. Lemme in mid-July 2005. Because the listing agreement had expired and because Ms. Lemme, through Mr. Thompson, had made it clear to Mr. Hendrixson that they did not want NAI's continued assistance in the sale of the property, Mr. Hendrixson was under no obligation to handle or otherwise participate in the offer extended by Ms. Anderson's clients. When Ms. Anderson presented the new offer to Mr. Hendrixson, he merely referred her to Ms. Lemme; this does not constitute a waiver of NAI's rights under the listing agreement. *See Knoxville Rod & Bearing, Inc.*, *supra*.

### ii. Breach of Fiduciary Duty

Ms. Lemme also asserts in her motion for summary judgment that NAI is not entitled to its commission because Mr. Hendrixson breached his fiduciary duty to Ms. Lemme by waiting until after the closing to inform her that NAI would seek its commission due from the sale of the property.

In Tennessee, real estate brokers stand in a fiduciary relationship with their principals. *Ellison v. Alley*, 842 S.W.2d 605, 608 (Tenn. 1992); *Youngblood v. Wall*, 815 S.W.2d 512, 516 (Tenn. Ct. App. 1991). They have a duty to "refrain from prejudicing their [principals'] interests in favor of [their] own" and "a duty of honesty, candor and fair dealing to all those with whom [they] deal...." *Parks v. Morris*, 914 S.W.2d 545, 550 (Tenn. Ct. App. 1995) (citing *Youngblood*, 815 S.W.2d at 516). For example, brokers cannot manipulate the documentation of a sale, *see Youngblood*, 815 S.W.2d 512, or the timing of a closing to conceal that a substantial profit will accrue to themselves. *See Ellison v. Alley*, 842 S.W.2d 615 (Tenn. 1992). By the same token, however, "[a] landowner who has listed his real estate with a broker cannot avoid a commission by taking the negotiations out of the hands of the broker after the broker had produced a purchaser." *Parks v. Morris*, 914 S.W.2d 545 (Tenn. Ct. App. 1995) (citing *Bryan v. Purnell*, 5 Tenn.Civ.App. 623, 628-29 (1914)).

The undisputed record shows that following the expiration of the term of the listing agreement, Mr. Hendrixson had one conversation with Ms. Anderson at which time she told him that she had a third offer from her clients that she wished to convey to Ms. Lemme; in response, Mr. Hendrixson told her that NAI was no longer Ms. Lemme's broker and that she should, therefore,

take her clients' offer directly to Ms. Lemme. The record does not show that Mr. Hendrixson knew of the amount of the offer or that it was accepted by Ms. Lemme on July 14. The record shows that he first learned of the sales contract and subsequent sale of the property after it sold.

Ms. Lemme cites *Prudential Botts* again in support of her argument that Mr. Hendrixson breached his fiduciary duty to her by not informing her before the closing that he would seek NAI's commission under the listing agreement. In *Prudential Botts*, the court found that Mr. Botts violated his fiduciary duty to his client by "allow[ing] the sales contract to go forward without any additional commission listed." *Prudential Botts*, 1994 WL 398826, at *6. Unlike in *Prudential Botts*, the record here does not show that Mr. Hendrixson saw or otherwise knew what, if any, commission was listed for NAI in the July sales contract prepared by Ms. Anderson. In fact, Mr. Hendrixson did not receive a copy of the July sales contract until after the August 31, 2005, closing.

The facts here more closely align with those in *Parks v. Morris*, 914 S.W.2d 545 (Tenn. Ct. App. 1995). *Parks* involved the sale of commercial real estate where the owner, Mr. Morris, was himself a real estate broker, but chose to employ a local broker, Mr. Parks, to list, market and sell the property. Mr. Parks found a prospective buyer and informed Mr. Morris of two written offers he had received. Mr. Parks requested counteroffers from Mr. Morris and made numerous efforts to contract him; however, Mr. Morris did not respond. Ultimately, Mr. Parks allowed the prospective buyer's broker to complete the sale directly with Mr. Morris since Mr. Morris refused to communicate with Mr. Parks. Once the sale was completed, Mr. Parks sought his commission from Mr. Morris and a lawsuit ensued. *Parks*, 914 S.W.2d at 546-47. The *Parks* court found that the ultimate sale flowed directly from Mr. Parks' introduction of the buyer to Mr. Morris and that when the sale was completed, Mr. Parks had substantially performed his part of the contract and Mr. Morris had received the promised benefits. Mr. Morris, "therefore, could not refuse to pay the commission." *Parks*, 914 S.W.2d at 549-550.

In its decision, the *Parks* court rejected Mr. Morris' reasoning that Mr. Parks should not receive his commission because he did not remind Mr. Morris or the closing attorney of the agreed commission or appear at the closing to collect his commission. *Id.* at 550. The court found that given the fact that Mr. Morris did not deny that Mr. Parks was his agent and that Mr. Parks had procured the buyer, Mr. Parks acted consistently with his fiduciary duty to Mr. Morris. The court reasoned that:

> [Mr. Parks], understood that as part of his fiduciary duty to [Mr. Morris] he should not interfere with the closing simply to collect his commission. [Mr. Parks'] duty was to provide a buyer to his principal and get the transaction closed. [Mr. Morris], for his part, may not take over the negotiations with the buyer produced by [Mr. Parks], cut off all communications with [Mr. Parks], close the deal without telling [Mr. Parks] and then accuse [Mr. Parks] of violating his fiduciary duty.

*Id.* at 551.

-12-

In this case, the listing agreement provided that NAI would receive a 6 percent commission if a sales contract was entered into or the property was sold within 90 days of the expiration of the listing agreement to a buyer introduced to Ms. Lemme during the term of the listing agreement by NAI. Mr. Hendrixson procured a group of individuals who were interested in buying the property in June 2005, during the term of the listing agreement; those same prospective buyers, Steven R. Griffith, Terry and Jennifer Harris and Robert Cooper, entered into a sales contract to purchase Ms. Lemme's property on July 14, 2005, which was within 90 days of the expiration of the listing agreement. Mr. Hendrixson acted consistently with his fiduciary duty to Ms. Lemme by performing under the contract – he marketed the property and procured a buyer who entered into a sales contract with Ms. Lemme. Mr. Hendrixson, therefore, performed his duty under the listing agreement and we cannot now find that he breached his fiduciary duty by claiming a right granted to him under the express terms of the listing agreement.

For the above reasons, we find that the trial court erred in granting Ms. Lemme's motion for summary judgment.

## NAI's Motion for Summary Judgment

NAI contended in its motion that it was entitled to summary judgment because Mr. Hendrixson introduced Steven R. Griffith, Terry and Jennifer Harris, and Robert Cooper, to the property during the term of the listing agreement and that the same individuals signed a sales contract on July 14, 2005, which was within 90 days of the expiration of the listing agreement and, consequently, by the express terms of the agreement, NAI should receive a 6 percent commission as a result.

In support of its motion, NAI presented the listing agreement, which provided in paragraph 4 that Ms. Lemme agreed to pay NAI a 6 percent commission "if, within 90 days after the expiration of the Term, . . . Owner enters into a contract of sale for the Property with, . . . anyone introduced to the property during the period of this exclusive" sales listing agreement. NAI also presented the June 2005 offer prepared by Ms. Anderson listing as the prospective buyers, Steven R. Griffith, Terry and Jennifer Harris, and Robert Cooper. NAI further presented the July 14, 2005, sales contract signed by Ms. Lemme as the seller and the same four individuals as the buyers. Finally, NAI presented the testimony of both Mr. Hendrixson and Ms. Lemme that Mr. Hendrixson introduced these prospective buyers to Ms. Lemme during the term of the listing agreement. This evidence showed that Ms. Lemme entered into a contract of sale for the property with persons introduced to the property by Mr. Hendrixson during the term of the listing agreement within 90 days of the expiration of the listing agreement; consequently, NAI produced sufficient evidence to prove its claim that Ms. Lemme owed NAI its commission under the listing agreement.

Having properly supported its motion, the burden of production shifted to Ms. Lemme to establish a genuine issue of material fact by pointing to evidence overlooked or ignored by NAI or producing additional evidence. *Martin*, 271 S.W.3d at 84 (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215). Ms. Lemme responded that summary judgment was inappropriate

because there were "several material facts in dispute" including (1) whether the eventual buyer of the property was the same prospective buyer introduced to her by Mr. Hendrixson in June 2005, (2) if the buyer was the same, whether NAI should receive a 3% instead of 6% commission on the sale, (3) whether Mr. Hendrixson properly performed his duties under the listing agreement to market and show the property, (4) whether Mr. Hendrixson breached his fiduciary duties to Ms. Lemme, (5) whether "[t]he fact that Radley Hendrixson signed the Exclusive Sales Listing Agreement as broker although he was not a broker was a fraud that voided the contract," and (6) whether Ms. Lemme's "failure to be provided a copy of the contract voided the contract."

*i. Whether the property's buyer was introduced to the property during the term of the listing agreement*

Ms. Lemme argued that the property was sold to Paddock Center LLC, "a separate legal entity than the original buyers who presented an offer in June 2005." In support, Ms. Lemme presented the warranty deed showing that the buyer of the property was Paddock Center LLC. Ms. Lemme also pointed to the entire record to show that Paddock Center LLC was not a prospective buyer during the listing term.

We do not find that Ms. Lemme has carried her burden of production with respect to this issue. The listing agreement does not require an eventual sale to buyers introduced to the property during the listing term in order for NAI to be entitled to a commission. Under the express terms of the listing agreement, NAI was entitled to its commission when Ms. Lemme entered into a "contract of sale for the property" within 90 days after the expiration of the term "to anyone introduced to the property during the term...."

The listing agreement expired on June 30, 2005. Prior to June 30, Mr. Hendrixson introduced the property to and procured an offer from Steven R. Griffith, Terry and Jennifer Harris, and Robert Cooper. On July 14, 2005, Ms. Lemme entered into a contract of sale for the property with Steven R. Griffith, Terry and Jennifer Harris, and Robert Cooper. The listing agreement does not require an eventual sale to these same people, although it also provides for that scenario in paragraph 5. Thus, to the extent there may be a factual dispute as to whether the actual buyer of the property was the same group which signed the sales contract, such factual dispute is not material.[6] *See Byrd v. Hall*, 847 S.W.2d at 215 ("A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed"). Consequently, we do not find that there is a genuine issue of material fact for trial and that NAI was entitled, as a matter of law, to its commission pursuant to paragraph 4 of the listing agreement.

*ii. Whether NAI is entitled to a 3 percent or 6 percent commission*

---

[6] While we do not find it necessary to determine whether Paddock Center LLC or its members were composed of the same individuals who signed the July contract, we note that there is some circumstantial evidence that there may be a relationship between Paddock Center LLC and the prospective buyers represented by Ms. Anderson as the address listed for the buyer of the property on the warranty deed is the same address listed for Steven R. Griffith on the June 2005 proposed sales contract as well as the July 14, 2005, sales contract.

NAI presented the listing agreement as well as the Schedule of Sale Commissions executed by Ms. Lemme on December 14, 2004, in support of its contention that it was owed a 6 percent commission. The Schedule provided, "[a]s to sales of improved real property, Broker's commission shall be 6% of the gross sales price." Having produced sufficient evidence that it was entitled to a commission under paragraph 4 of the listing agreement and that it was owed a commission of 6 percent on the gross sales price, which in this case was $840,000.00, the burden of production shifted to Ms. Lemme to establish a genuine issue for trial.

Ms. Lemme responded by pointing to the June 2005 proposed sales contract prepared by Ms. Anderson on behalf of her clients that listed Mr. Hendrixson's commission as 3 percent. Ms. Lemme argued that "if [Mr. Hendrixson] had actually represented [Ms. Lemme] at this closing, at most he would have earned is 3%." In support of this contention, Ms. Lemme pointed to the testimony of Mr. Hendrixson wherein he admitted that if the June 2005 sales contract had been accepted by Ms. Lemme, NAI would have only received a 3 percent commission.

Ms. Lemme's evidence does not establish a genuine issue of material fact for trial. The negotiations associated with the June 2005 proposed sales contract are irrelevant for determining NAI's commission due from the sales contract executed on July 14, 2005. Ms. Lemme presents only a hypothetical scenario suggesting that because Mr. Hendrixson agreed in June to reduce his commission that he would have done the same in July. Ms. Lemme has not presented or pointed to evidence showing that Mr. Hendrixson would have agreed to the same commission reduction had he been involved in the process in July. Consequently, we do not find that there is a genuine issue for trial as to the correct percentage commission due NAI as a result of the signing of the July 14, 2005, sales contract between Ms. Lemme and Steven R. Griffith, Terry and Jennifer Harris, and Robert Cooper.

### iii. Whether Mr. Hendrixson performed his duties under the listing agreement

Ms. Lemme responded to NAI's motion that it was entitled to its commission under the listing agreement by contending that there is a genuine issue for trial as to whether Mr. Hendrixson performed his duties under the listing agreement such that NAI is entitled to its commission. Ms. Lemme argued that Mr. Hendrixson did not "properly market or show the property" and, in support, she pointed to the portion of the listing agreement that requires the Broker to "use its best efforts to effect a sale." Ms. Lemme also pointed the testimony of Mr. Hendrixson wherein he answered the following questions thusly:

Q: How many people from December 15, 2004 until let's say January 31, 2005 – how many people did you show this building to?
A: Physically, like meet and show?
Q: yes.
A: None, that I can recall, other than co-workers, co-brokers or co-affiliates brokers – co-agents, I should say.

Q: Between January 31, 2005 and March 28th, 2005 when you received this offer from Hollace McKinley, to whom did you show this property?
A: I don't have a list. I don't know.
Q: Did you show it to anybody?
A: I don't think I had. I don't think I did. I reservedly say that. I don't remember.

We do not find that Ms. Lemme has carried her burden of production establishing a genuine issue for trial. The record shows that the day after Ms. Lemme executed the listing agreement, Mr. Hendrixson met with NAI's marketing team and developed a plan including preparing a printed brochure for the property, erecting a large for-sale sign that was placed in front of the property, and listing the property on various online commercial real estate marketing web sites. Mr. Hendrixson testified that in addition to the print and online marketing of the property, he made several phone calls and showed the property to various brokers and real estate agents to let them know about the availability of the property. Before the end of the listing term, Mr. Hendrixson had procured multiple offers from multiple potential buyers. Ms. Lemme has filed nothing to create an issue as to whether these acts were sufficient to satisfy Mr. Hendrixson's duties as the property's listing agent. As a result, we do not find that there is a genuine issue for trial with respect to whether Mr. Hendrixson performed his duties under the listing agreement.

*iv. Other issues raised by Ms. Lemme in response to NAI's summary judgment motion*

The remaining issues raised by Ms. Lemme in response to NAI's motion for summary judgment were issues of law that were not alleged as grounds for her summary judgment motion. As stated previously, the burden of production shifted to Ms. Lemme to establish genuine issues of material fact for trial or that NAI was not entitled to judgment as a matter of law. We find that Ms. Lemme has failed to meet her burden.

Ms. Lemme contended that Mr. Hendrixson "owed certain fiduciary duties" to her as the listing agent and that he breached those duties, which, she contends, bars him from receiving a commission. In support of this contention, Ms. Lemme points to her Answer wherein she alleged as an affirmative defense that Mr. Hendrixson violated various statutory provisions including Tenn. Code Ann. §§ 62-13-212, -403, and -404, and that such violations constituted a breach of his fiduciary duty to her. Ms. Lemme did not present or point to any evidence in the record in support of this contention and, consequently, she has failed to meet her burden of production establishing that there is a genuine issue for trial. *See* Tenn. R. Civ. P. 56.06 ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

Ms. Lemme also contended that "[t]he fact that Radley Hendrixson signed the Exclusive Sales Listing Agreement as broker although he was not a broker was a fraud that voided the contract." In support of this contention, Ms. Lemme pointed to Mr. Hendrixson's testimony wherein

he acknowledged that the title attributed to himself on the listing agreement was broker rather than affiliate broker. Ms. Lemme does not cite any legal authority in support of her contention that such action constitutes fraud. In Tennessee, "[f]raud occurs when a person intentionally misrepresents a material fact or intentionally produces a false impression in order to mislead another or to obtain an unfair advantage." *Lopez v. Taylor*, 195 S.W.3d 627, 634 (Tenn. Ct. App. 2005) (citing *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001)); *see also Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 (Tenn.1999); *First Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn.1991). There is no evidence that Mr. Hendrixson intentionally misrepresented his status as an affiliate broker. Mr. Hendrixson testified thusly:

> Q: Were you supposed to put affiliate broker there or broker?
> A: I found that out since then, yes, ma'am.
> Q: That what?
> A: That I'm supposed to - - if I list a title, I'm supposed to put agent or affiliate broker in the capacity I had at the time.

Consequently, Ms. Lemme has failed to carry her burden of production establishing a genuine issue for trial with respect to fraud.

Finally, Ms. Lemme contends that Mr. Hendrixson's failure to provide Ms. Lemme with a copy of the executed listing agreement voided the contract. In support of this contention Ms. Lemme points to her testimony that she did not receive a copy as well as that of Mr. Hendrixson wherein he testified that he did not recall providing Ms. Lemme with a copy of the listing agreement. Ms. Lemme asserts that "failure to deliver the contract was a breach of the agent's duties to his client per TCA [sic] 62-13-312 and voided the contract." Ms. Lemme cites no other authority for her contention that a violation of this statutory provision has the effect of voiding a listing agreement. Tenn. Code Ann. § 62-13-312(b) authorizes the Real Estate Commission "to refuse a license for cause or to suspend or revoke a license . . . where a licensee, in performing or attempting to perform any of the acts mentioned herein, is found guilty of . . . [f]ailing to furnish a copy of any listing, sale, lease, or other contract relevant to a real estate transaction to all signatories thereof at the time of execution...." Tenn. Code Ann. § 62-13-312(b)(8). This statute is inapplicable here as it relates to disciplinary actions that may be taken by the commission. We find no other authority suggesting that the remedy for a real estate agent's failure to provide a copy of the listing agreement to his or her client would be nullification of the contract; consequently, Ms. Lemme has failed to carry her burden of production establishing a genuine issue for trial.

Because NAI properly supported its motion and demonstrated as a matter of law that it is entitled to a 6 percent commission on the gross sales price based on the executed July 14, 2005, sales contract between Ms. Lemme and Steven R. Griffith, Terry and Jennifer Harris, and Robert Cooper, buyers who were introduced to the property during the term of the listing agreement and because Ms. Lemme failed to establish that there were any material facts in dispute with respect to NAI's motion, we find that the trial court erred in denying NAI's motion for summary judgment.

NAI contends that if its summary judgment motion is granted, it is also due pre-judgment interest and reasonable attorney's fees. NAI points to the Schedule executed by Ms. Lemme and expressly incorporated into the listing agreement in support of its contention. The Schedule provided in pertinent part:

> This commission shall be paid at closing or if there is no closing, then upon recordation of the deed . . . In the event Owner fails to make payments within the time limits set forth herein, then from the date due until paid the delinquent amount shall bear interest at ten percent (10%) per annum. If Broker is required to institute legal action against Owner relating to this Schedule or any agreement of which it is a part, Broker shall be entitled to reasonable attorney's fees and costs, provided Broker prevails in said action for the amount claimed.

Having found NAI was entitled to summary judgment for the amount claimed, 6 percent of $840,000.00, or $50,400.00, we find that pursuant to the listing agreement, NAI is also entitled to pre-judgment interest from September 1, 2005, the date the deed for the property was recorded with the Wilson County Register's Office as well as reasonable attorney's fees and costs.

## III. Conclusion

Having found that the listing agreement executed by the parties' is enforceable and Ms. Lemme was not entitled to summary judgment, but that NAI was entitled to summary judgment, we reverse the judgment of the trial court granting summary judgment to Ms. Lemme and we grant summary judgment to NAI. We remand the case for determination of pre-judgment interest, reasonable attorney's fees and costs.

Costs of this appeal are taxed to Ms. Lucianna Lemme.

_____
RICHARD H. DINKINS, JUDGE

-18-