# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### January 4, 2005 Session

## MARY TAYLOR LOPEZ v. DANNY HOLBROOK TAYLOR ET AL.

**Appeal from the Circuit Court for Wilson County**
**No. 12524     John D. Wootten, Jr., Judge**

---

**No. M2003-02481-COA-R3-CV - Filed December 28, 2005**

---

This appeal involves a dispute between divorced parents over one of their son's college expenses. Their older son became eligible for a substantial tuition discount after his father was employed by the university where he was enrolled. However, the father and son concealed the father's employment and the son's discount from the mother and actually sent her statements that did not reflect the discount. The mother paid one-half of the expenses reflected in these statements until she discovered the tuition discount. She then filed suit against her former husband and her son in the Circuit Court for Wilson County alleging breach of contract and fraud. She also sought a declaration regarding her continuing obligation to pay her son's college expenses. Following a bench trial, the trial court concluded that the father had breached the marital dissolution agreement and ordered the father to pay the mother $2,737.01. The court also found that the mother had breached the marital dissolution agreement by declining to pay her son's college expenses after discovering the tuition discount and ordered her to resume paying her share of these expenses. The mother appealed. We have concluded (1) that the father committed a material breach of the marital dissolution agreement, (2) that the father and the son engaged in fraudulent conduct by concealing the tuition discount from the mother and then pocketing her overpayments, (3) that the mother did not breach the marital dissolution agreement when she stopped paying her son's college expenses, and (4) that the trial court erred in calculating the amount of the mother's overpayment. Accordingly, we have determined that the mother is entitled to recover $3,590 from the husband and that the actions of the father and son warrant terminating her obligation to pay the son's college expenses.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part And Reversed in Part**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

Brad W. Hornsby and Aaron S. Guin, Murfreesboro, Tennessee, for the appellant, Mary Taylor Lopez.

Gregory D. Smith, Nashville, Tennessee, for the appellees, Danny Holbrook Taylor, Adam Holbrook Taylor, and Phillip Anthony Taylor.

# OPINION

## I.

In October 1992, the Wilson County General Sessions Court granted Danny Taylor a divorce from Mary Taylor (now Mary Taylor Lopez) on the ground of irreconcilable differences. In the marital dissolution agreement that was incorporated into the final decree, the parties agreed to joint custody of their two sons, aged ten and seven, with Ms. Lopez as the primary residential parent. The parties also agreed that they would "equally pay the children's college education including tuition, books, school dues and room and board while they attend college."

Following the divorce, the parties' children apparently began residing with Mr. Taylor, and Ms. Lopez began paying child support. Either in late 1999 or early 2000, Mr. Taylor filed a petition to increase and extend Ms. Lopez's child support obligations. Ms. Lopez responded by requesting a reduction in her child support because the parties' oldest child, Adam Taylor, was about to turn eighteen. In an order dated March 29, 2000, the court denied Mr. Taylor's petition and adjusted Ms. Lopez's child support payments effective on Adam Taylor's eighteenth birthday. The court also clarified the parties' obligations with regard to paying for their children's college educations. The order specifically stated that:

> the Petitioner [Mr. Taylor] and Respondent [Ms. Lopez] shall both be required to pay one-half of the college expenses for the parties' children, as ordered by the Final Decree of Divorce. This shall include one-half of the child's tuition, books, school dues, and room and board. That the child shall establish a checking account at a National Bank of his choosing into which the parties will deposit their one-half of the amounts necessary to pay for tuition, school dues, and room and board. The child shall, with the assistance of the Petitioner, provide information pertaining to the bank account, and documentation of the exact amount of these expenses to the Respondent in a timely manner so that the appropriate sums can be deposited to said bank account within fifteen (15) days of their receipt. Costs for books shall be initially paid by the child, or by the Petitioner, who shall then provide Respondent with copies of the receipts, and she shall then reimburse the proper amount to his account, or to the Petitioner, within fifteen (15) days of the date she receives such receipts.

The order also required each party to provide $100 per month for the child's "entertainment and food expenses."

In August 2000, Adam Taylor enrolled at David Lipscomb University following his graduation from high school. In December 2000, Mr. Taylor became employed by David Lipscomb University as its Executive Vice President for Financial Affairs. One of the employment benefits

-2-

Mr. Taylor received was that his dependents became eligible to receive substantial tuition discounts if they attended David Lipscomb University.[1] Mr. Taylor and Adam Taylor decided not to inform Ms. Lopez that Mr. Taylor was employed at David Lipscomb University or that Adam Taylor would be paying a discounted tuition.

Their plan succeed for four semesters. Adam Taylor's net expenses for the Fall 2000 semester were $5,764.[2] Mr. Taylor prepared a letter for Adam to send to Ms. Lopez, and Ms. Lopez promptly deposited $2,882 into Adam's account. Adam Taylor was entitled to a 25% tuition discount in the Spring 2001 semester. Despite the fact that his net expenses were $4,624, Mr. Taylor prepared a letter for his son to send Ms. Lopez stating that his expenses were $5,944. Believing that amount to be accurate, Ms. Lopez deposited $2,972 into Adam's account. Thereafter, Mr. Taylor paid $2,312 toward his son's college expenses, and Adam Taylor wrote his father a check for $632.50 – the amount of Ms. Lopez's overpayment.

This pattern repeated itself during the Fall 2001 and the Spring 2002 semesters. Even though Adam Taylor's net expenses for the Fall 2001 and Spring 2002 semesters were $3,862, Ms. Lopez deposited $3,410 into her son's account based on Mr. Taylor's and Adam's representations that the expenses were $6,820.

When the time came to request payment for the Fall 2002 semester, Mr. Taylor and Adam represented to Ms. Lopez that Adam's net expenses were $7,316, even though they were actually only $3,593. Ms. Lopez declined to deposit any funds into her son's account because by this time she had discovered that Mr. Taylor was working for David Lipscomb University, and she suspected that her son was receiving a tuition discount. Her suspicions were confirmed when Adam Taylor refused to respond when she asked him if he was receiving a tuition discount.

In December 2002, Ms. Lopez filed an action in the Circuit Court for Wilson County, alleging breach of contract and fraud. She also sought a declaratory judgment regarding her continuing obligation to pay child support. She requested the trial court either to rescind the portion of the marital dissolution agreement obligating her to pay college expenses or to order Mr. Taylor and Adam to reimburse her for the overpayments she had made as a result of their deception.

Mr. Taylor took the position that the tuition discount should be credited entirely to him because it was a benefit he received by working at David Lipscomb University. Thus, even after Ms. Lopez filed her suit, Mr. Taylor and Adam sent Ms. Lopez a letter stating that Adam's college expenses for the Spring 2003 semester were $7,618, even though his net expenses were only $3,676. When Ms. Lopez declined to deposit $3,809 into Adam's account, Mr. Taylor and Adam filed a counterclaim against Ms. Lopez for $3,809.

---

[1]These discounts began in the second semester of the dependent's first school year, and the amount of these discounts increased every year to a maximum of 75%.

[2]He was not entitled to the tuition discount during his first semester, and he received a $2,000 academic scholarship.

The court conducted a bench trial in June 2003. Ms. Lopez presented evidence substantiating the conduct of Mr. Taylor and Adam since Adam's enrollment at David Lipscomb University. She also pointed out the income disparity between her and Mr. Taylor[3] and explained that she had been required to withdraw funds from her IRA to pay these college expenses. Mr. Taylor and Adam Taylor were unrepentant about their conduct, insisting that the discount belonged to Mr. Taylor rather than to Adam Taylor. For example, Adam Taylor explained:

> [I]t was my Dad's benefit and therefore directly had no relation on my mom. . . . So, it wasn't her benefit, and there was no reason to give her any - - I mean, one thing, we didn't want her into our life, you know. So, we felt there was no reason to let her know if it was not hers.

Mr. Taylor justified his actions by explaining:

> If you go back to the history of bartering, exchange, you know, what people pay for things. I mean, you're interpretation of pay is much different than my interpretation of pay. If you're talking about [how] Ms. Lopez wrote a check, that's one thing. . . . [If] you're talking about how I paid that. I drive to Nashville every day, an hour up, an hour back. If you want to know, my compensation is occurring every day. And, you know, again, I mentioned a few minutes ago, the only person to gain in this is Mrs. Lopez because these two boys don't pay anything.
>
> Now, I just want to say, you know, pay in your terms is totally different than pay in my terms. You know, in the deposition you went over and over with that. But the reality of it is, I certainly believe that I pay many, many times over the terms pay, with my employee tuition discount.

Neither Mr. Taylor nor Adam Taylor provided a sound explanation for their decision to keep Ms. Lopez in the dark about Mr. Taylor's employment at David Lipscomb University or the existence of the tuition discounts. Adam Taylor testified that Ms. Lopez was not told because of "past activities that had occurred." For his part, Mr. Taylor testified that he "didn't see any reason I needed to let her know that I was employed at Lipscomb University. I didn't see that it had any value."

The trial court concluded that Mr. Taylor and Adam Taylor had not committed fraud but that Mr. Taylor had breached the marital dissolution agreement and should be required to reimburse Ms.

---

[3]During this period, Ms. Lopez earned between $22,000 and $26,000 per year. Mr. Taylor earned $90,000 per year.

Lopez for her overpayments.[4]  The court ordered Ms. Lopez to continue paying her share of Adam Taylor's college expenses.  The court also concluded that both parties had not complied with their obligations to pay Adam Taylor $100 per month for his "entertainment and food expenses."[5]

Shortly after its decision, the trial court informed the parties that it intended to modify its decision in several material respects and requested the parties to return to court for additional findings of fact.  On September 12, 2003, the trial court modified its decision to find that both parties had breached the marital dissolution agreement.  The court concluded that Ms. Lopez had breached the agreement by refusing to pay for Adam Taylor's college expenses after she filed her suit.  The court also reduced the $6,793 judgment against Mr. Taylor to $2,737.01 to take into consideration the parties' respective tuition obligations for the Fall 2002 and Spring 2003 semesters.

Ms. Lopez appealed.  She takes issue with the trial court's conclusions (1) that she breached the martial dissolution agreement by discontinuing the college expenses payments after she discovered the activities of Mr. Taylor and Adam Taylor and (2) that Mr. Taylor and Adam Taylor had not committed fraud.  She also asserts that the trial court erred by reducing its original $6,793 judgment and by refusing to give her access to Adam Taylor's college financial records.  For their part, Mr. Taylor and Adam Taylor assert that the trial court made several serious mathematical errors when it calculated Ms. Lopez's overpayment.

## II.
### THE PARTIES' RESPECTIVE OBLIGATIONS TO PAY COLLEGE EXPENSES

We turn first to the legal basis for the parties' obligations to pay their children's college expenses.  These expenses are not legally required because parents generally do not have a duty to support their children past the age of majority.  *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975); Tenn. Code Ann. § 34-1-102(b) (2001).  However, parents may voluntarily take on greater support obligations than the law requires, and when they do, this obligation can be enforced as a matter of contract.  *Hathaway v. Hathaway*, 98 S.W.3d 675, 678 (Tenn. Ct. App. 2002); *Bryan v. Leach*, 85 S.W.3d 136, 151 (Tenn. Ct. App. 2001); *Sandusky v. Sandusky*, No. M2000-00288-COA-R3-CV, 2001 WL 327898, at *4 (Tenn. Ct. App. Apr. 5, 2001) (No Tenn. R. App. P. 11 application filed).

Martial dissolution agreements frequently memorialize divorcing parties' agreements regarding the payment of college expenses.  These agreements are essentially contracts between a husband and wife in contemplation of divorce.  *Towner v. Towner*, 858 S.W.2d 888, 890 (Tenn. 1993); *Pylant v. Spivey*, 174 S.W.3d 143, 151 (Tenn. Ct. App. 2003).  They should be construed and enforced just like other contracts.  *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001); *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003).  Like all other contracts, marital

---

[4] The trial court initially determined that Ms. Lopez's overpayments amounted to $6,793.

[5] The court found that Ms. Lopez should not have stopped paying these expenses after she filed her lawsuit and that Mr. Taylor had only partially complied by paying Adam Taylor's car insurance which averaged only $70 per month.

dissolution agreements contain an implied covenant of good faith and fair dealing in the performance and interpretation of the contract. *Elliott v. Elliott*, 149 S.W.3d 77, 84-85 (Tenn. Ct. App. 2004). While this covenant does not create new contractual rights or obligations, it protects the parties' reasonable expectations and their right to receive the benefits of the agreement they entered into. *Goot v. Metropolitan Gov't*, No. M2003-002013-COA-R3-CV, 2005 WL 3031638, at *6-7 (Tenn. Ct. App. Nov. 9, 2005).

The parties' marital dissolution agreement is so clear and unambiguous that we need not resort to the canons of contract construction to ascertain the parties' intent or the nature of their agreement. Each party agreed to pay one-half of their children's (1) college tuition, (2) school books and dues, and (3) room and board. They also agreed that each of them would provide each child $100 per month for "entertainment and food expenses" while attending college. This interpretation was reiterated and confirmed in the trial court's March 29, 2000 order. Thus, for the purpose of this opinion, we conclude that both Mr. Taylor and Ms. Lopez were contractually obligated to pay one-half of the expenses each of their children actually incurred for tuition, books and dues, and room and board.

### III.
### THE CONDUCT OF MR. TAYLOR AND ADAM TAYLOR

Neither party disagrees with the trial court's conclusion that Mr. Taylor, with the assistance of Adam Taylor, breached the martial dissolution agreement by knowingly presenting Ms. Lopez with materially incomplete and misleading tuition statements for the purpose of inducing her to pay more than her share of Adam Taylor's college expenses. By violating the covenant of good faith and fair dealing, Mr. Taylor was able to evade his obligation to pay one-half of his son's college expenses. However, Ms. Lopez asserts that the trial court erred by declining to find that Mr. Taylor's conduct was fraudulent. We agree.

The essence of fraud is deception. In its most general sense, fraud is a trick or artifice or other use of false information that induces a person to act in a way that he or she would not otherwise have acted. *See Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 301 (Tenn. Ct. App. 2001). Fraud occurs when a person intentionally misrepresents a material fact or intentionally produces a false impression in order to mislead another or to obtain an unfair advantage. *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001). The elements of a claim for fraud include: (1) an intentional misrepresentation of an existing material fact, (2) knowledge of the representation's falsity, and (3) injury caused by reasonable reliance on the misrepresentation. *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 (Tenn. 1999); *First Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn. 1991); *Metropolitan Gov't v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992).

The evidence in this record fails to support the trial court's conclusion that Mr. Taylor and Adam Taylor did not fraudulently induce Ms. Lopez to pay more than her required share of Adam Taylor's college expenses. Beginning in the Spring 2001 semester, they intentionally represented to Ms. Lopez that Adam Taylor's college expenses were greater than they actually were. Ms. Lopez

reasonably relied on these representations and, as a result, paid more than her share of Adam Taylor's college expenses. In fact, by the Fall 2002 semester, Mr. Taylor and Adam Taylor were requesting Ms. Lopez to make payments that exceeded Adam's actual expenses. Mr. Taylor unfairly benefitted from this arrangement, not only because he tricked Ms. Lopez into paying more than her share of their son's expenses, but also because on at least one occasion, Adam Taylor gave him the difference between the amount Ms. Lopez deposited in his account and her correct share of his expenses.[6]

## IV.
### THE CONSEQUENCES OF THE CONDUCT OF MR. TAYLOR AND ADAM TAYLOR

Ms. Lopez also takes issue with the trial court's conclusions (1) that she breached the marital dissolution agreement when she discontinued paying her son's college expenses and (2) that she should be required to continue paying her son's college expenses despite the fact that Mr. Taylor, with Adam Taylor's assistance, breached his obligations under the marital dissolution agreement. She insists that she did not breach contract because the conduct of both Mr. Taylor and Adam Taylor provide grounds for terminating her obligation. We agree.

This matter is straightforward with regard to whatever contractual obligations Ms. Lopez may have had to Mr. Taylor. A party to a contract may terminate its performance under the contract when the other party (1) is wholly unable to complete the contract, *City of Bristol v. Bostwick*, 146 Tenn. 205, 211, 240 S.W. 774, 776 (1922); (2) manifests an intent to abandon the contract, *Brady v. Oliver*, 125 Tenn. 595, 614, 147 S.W. 1135, 1139 (1911); (3) manifests an intent to no longer be bound by the contract, *Church of Christ Home for Aged, Inc. v. Nashville Trust Co.*, 184 Tenn. 629, 642, 202 S.W.2d 178, 183 (1947); or (4) commits fraud on the party seeking to terminate the contract. *W.F. Holt Co. v. A & E Elec. Co.*, 665 S.W.2d 722, 730 (Tenn. Ct. App. 1983). Mr. Taylor's conduct, whether it be characterized as a breach of contract or fraud, excused Ms. Lopez of further performance of her contractual obligations to him.

However, Mr. Taylor and Ms. Lopez are not the only parties with legally protectable interests in the marital dissolution agreement. Their sons are intended third-party beneficiaries of the portion of the marital dissolution agreement regarding the payment of college expenses. Such agreements are generally regarded as intended third-party beneficiary contracts because their purpose is to confer a benefit on the children covered by the agreement. *See In re Marriage of Smith & Maescher*, 21 Cal. App. 4th 100, 105 (Cal. Ct. App. 1993); *Southard v. Southard*, 756 So. 2d 251, 253 (Fla. Dist. Ct. App. 2000); *Noble v. Fisher*, 894 P.2d 118, 123 (Idaho 1995); *Miller v. Miller*, 516 N.E.2d 837, 844 (Ill. Ct. App. 1987); *Stevens v. Stevens*, 798 S.W.2d 136, 139 (Ky. 1990); *Adams v. Adams*, 320 N.Y.S.2d 636, 638-39 (N.Y. Sup. Ct. 1971).

---

[6]Ms. Lopez deposited $2,972 into her son's account for his expenses during the Spring 2001 semester. Based on her son's actual net expenses, her payment should have been only $2,340. The record shows that after Ms. Lopez made the deposit in her son's account, he wrote a check to his father for $632.50.

When third-party beneficiary contracts are involved, determining whether one party's continuing performance is excused by the other party's breach depends upon whether the performance of the non-breaching party is conditioned on the other party's performance. As Professor Corbin has explained:

> If the contract between the promisee and the promisor is a bilateral contract, the promise made for the benefit of a third party may be unconditional or it may be conditional on performance of the return promise or tender thereof. If unconditional, a breach of duty by the promisee will not affect the right of the beneficiary against the promisor. If conditional and dependent, on the other hand, a failure by the promisee to perform his part may terminate the duty of performance by the promisor.

9 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 819, at 246-47 (Interim ed. 1979) (CORBIN ON CONTRACTS). The analysis with regard to third-party beneficiary contracts is further complicated by the principle that "[w]rongful acts of the promisee, subsequent to the making of the contract, that would greatly affect his own right, may not affect the beneficiary's right at all." 9 CORBIN ON CONTRACTS § 818, at 244.

Based upon the plain language of the marital dissolution agreement, Mr. Taylor's and Ms. Lopez's promises to pay Adam Taylor's college expenses were unconditional. The agreement did not state that Ms. Lopez would pay her share of the college expenses as long as Mr. Taylor paid his or vice versa. Each parent independently owed to Adam Taylor one-half of his college expenses. Therefore, simply because Mr. Taylor breached the contract by failing to pay his share of the college expenses does not, without more, excuse Ms. Lopez from her obligations under the marital dissolution agreement.

The analysis, however, does not end with Mr. Taylor. Adam Taylor's conduct may be taken into account to determine whether Ms. Lopez should be required to continue paying a portion of his college expenses. *See* RESTATEMENT (SECOND) OF CONTRACTS § 309 (1981) ("A beneficiary's right against the promisor is subject to any claim or defense arising from his own conduct or agreement"). Adam Taylor actively participated in the fraud against his mother. By doing so, he forfeited his right to have his college expenses paid by Ms. Lopez, and Ms. Lopez should be relieved of any further obligation to pay her son's college expenses.[7]

---

[7]Mr. Taylor's and Adam Taylor's actions will not affect that portion of the parties' martial dissolution agreement concerning their other son's college expenses because there is no evidence that he participated in the scheme to defraud Ms. Lopez.

# V.
## THE REIMBURSEMENT FOR MS. LOPEZ'S OVERPAYMENTS

All parties take issue with the manner in which the trial court calculated the amount that Mr. Taylor would be required to reimburse Ms. Lopez for her overpayment of Adam Taylor's college expenses. Ms. Lopez insists that she is entitled to the original judgment of $6,793. For their part, Mr. Taylor and Adam Taylor insist that the trial court should have directed him to pay $3,396.50 to Ms. Lopez and then required the parties the pay equal shares of the remaining balance owed to David Lipscomb University. We have determined that both of these calculations are flawed.

The calculation of Ms. Lopez's overpayments is straightforward. Because of the evidence that the parties each paid their share of Adam Taylor's books, the calculation should be based on the actual statements sent by David Lipscomb University for Adam Taylor's tuition, school fees and dues, and room and board. Taking the evidence regarding Ms. Lopez's actual payments into consideration, the following table reflects a proper calculation of Ms. Lopez's overpayments:

| Semester | Net Expenses | Lopez Share | Lopez Payment | Overpayment |
|---|---|---|---|---|
| Fall 2000 | 5,764 | 2,882 | 2,882 | 0 |
| Spring 2001 | 4,679 | 2,340 | 2,972 | 632 |
| Fall 2001 | 3,862 | 1,931 | 3,410 | 1,479 |
| Spring 2002 | 3,862 | 1,931 | 3,410 | 1,479 |
| **Total** | **18,167** | **9,084** | **12,674** | **3,590** |

We have already determined that Ms. Lopez had cause to discontinue subsidizing Adam Taylor's college expenses when she discovered what he and his father had been doing. Accordingly, the damage calculation need not take into account any college expenses Adam Taylor incurred during and after the Spring 2002 semester.

Ms. Lopez also asserts that she is entitled to recover the additional taxes she was required to pay when she withdrew funds from her IRA to pay Adam Taylor's college expenses. While these additional taxes could very well be included in the assessment of damages, Ms. Lopez presented no evidence of their amount. The party seeking damages has the burden of proving them. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982). Without any evidence in the record regarding the amount of additional taxes Ms. Lopez was required to pay, we have no basis for awarding her additional damages on appeal.

The evidence demonstrates that Ms. Lopez paid $3,590 more for Adam Taylor's college expenses than she was required to pay under the marital dissolution agreement. She is, therefore, entitled to an order requiring Mr. Taylor to reimburse her for these overpayments. Accordingly, on

remand, the court should modify its September 12, 2003 order to require Mr. Taylor to pay Ms. Lopez $3,590 rather than the $2,737.01 payment contained in the order.

## VI.
## MS. LOPEZ'S REQUEST FOR ACCESS TO HER SON'S COLLEGE FINANCIAL RECORDS

Finally, Ms. Lopez takes issue with the trial court's denial of her request for access to Adam Taylor's college financial records. In light of the prior conduct of Adam Taylor and Mr. Taylor, this request would be reasonable if Ms. Lopez had an obligation to continue paying a portion of her son's college expenses. However, she no longer needs access to these records because we have relieved her of any further obligation to pay any portion of Adam Taylor's college expenses.

## VII.

In summary, we reverse the portions of the September 12, 2003 order finding (1) that Ms. Lopez breached the marital dissolution agreement, (2) that she had a continuing obligation to pay Adam Taylor's college expenses after the Spring 2002 semester, (3) that Mr. Taylor and Adam Taylor had not fraudulently induced Ms. Lopez to pay more of Adam Taylor's college expenses than she was required to pay, and (4) that Ms. Lopez was entitled to recover $2,737.01 from Mr. Taylor. We affirm all other portions of the order and remand the case to the trial court with directions to enter an order directing Mr. Taylor to pay Ms. Lopez $3,590 to reimburse her for the overpayment of Adam Taylor's college expenses and for whatever other proceedings consistent with this opinion may be required. We tax the costs of this appeal to Danny Holbrook Taylor for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.