# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 19, 2015 Session

## REGINA K. DEAL v. ROBERT C. TATUM

### Appeal from the Chancery Court for Dickson County
### No. 2014-CV-368   Larry J. Wallace, Judge

---

### No. M2015-01078-COA-R3-CV – Filed January 29, 2016

---

At issue is the ownership of real property. Plaintiff and Defendant divorced in 2001. In February 2005, they purchased a home as "tenants in common with right of survivorship." Seven months later, in September 2005, Defendant transferred his interest in the property to Plaintiff by quitclaim deed. In March 2009, Plaintiff quitclaimed her interest in the property to Defendant. Neither quitclaim deed was recorded until a dispute arose in September 2014 following which Plaintiff commenced this action to set aside the 2009 quitclaim deed based on fraud. Plaintiff contends Defendant fraudulently induced her into conveying the property by assuring her that he would refinance the property and give Plaintiff her share of the equity within one year. Defendant insists he purchased the property outright for $9,000, a payment Plaintiff admits receiving. At trial, Defendant objected to evidence of a purported oral agreement based on the statute of frauds. The trial court ruled the defense had been waived and that evidence of an oral agreement was admissible based on equitable estoppel, an exception to the statute of frauds. At the conclusion of the trial, the court ordered that Plaintiff's name be put back on the deed so that "both of you . . . own the property together." Both parties appeal. The trial court summarized the testimony of the witnesses and discussed some relevant legal principles; however, it made few findings of fact, and the findings of fact and conclusions of law identified by the trial court fail to disclose the steps by which the trial court reached its decision. Although, we do not have a clear understanding of the basis for the trial court's decision, it appears that the trial court's ruling was based on equitable estoppel, which is significant because equitable estoppel is not a basis for affirmative relief. Because equitable estoppel is not a basis for the relief granted and the trial court did not make sufficient findings of fact and conclusions of law as required by Tenn. R. Civ. P. 52.01, we vacate the judgment and remand for the trial court to make findings of fact that include as much of the subsidiary facts as is necessary to disclose the steps by which the trial court reached its ultimate conclusion on each factual issue.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD R. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Irene R. Haude, Nashville, Tennessee, for the appellant, Robert C. Tatum.

Kirk Vandivort and Andrew E. Ellis, Dickson, Tennessee, for the appellee, Regina K. Deal.

**OPINION**

Regina K. Deal ("Plaintiff") and Robert C. Tatum ("Defendant") divorced in 2001. They later reconciled and, on February 9, 2005, purchased a home on Hargrove Road in Dickson, Tennessee, as "tenants in common with right of survivorship." Contemporaneous with purchasing the property at issue, the parties executed a deed of trust and note in the original principal amount of $117,161, for which they were jointly and severally liable.

On September 13, 2005, Defendant transferred his interest in the property to Plaintiff by quitclaim deed for one dollar, "cash in hand paid," in an effort to shield the home from Defendant's creditors.[1] The only written document pertaining to this transaction is the quitclaim deed executed by both parties. This quitclaim deed was not recorded until September 14, 2014.

Sometime in 2006 or 2007, the parties separated for the last time when Defendant moved from the home. Thereafter, Plaintiff attempted to refinance the property but was unsuccessful, and, in late 2008, she began preparing the property for sale. Upon learning of this, Defendant expressed interest in acquiring the property. On March 20, 2009, Plaintiff quitclaimed her interest in the property to Defendant, and as was the case with the previous conveyance between the parties, the quitclaim deed is the only documentation of the parties' agreement. The quitclaim deed states that the property was conveyed in consideration of the sum of one dollar, "cash in hand paid."[2] Defendant did not record his 2009 deed until September 8, 2014.

Although no writing exists evidencing an agreement other than that stated in the quitclaim deed, Plaintiff contends that she conveyed the property to Defendant based on an expressed agreement that he would refinance the property within one year and pay

---

[1] The consideration affidavit signed by Plaintiff states that "the actual consideration for this transfer is $-0-."

[2] The consideration affidavit signed by Defendant states that "the actual consideration for this transfer is $-0-."

- 2 -

Plaintiff her share of the equity. Plaintiff also contends that Defendant agreed the deal would be off if he was unable to refinance the loan within one year and he would destroy the quitclaim deed, thereby leaving the property in Plaintiff's name. Conversely, Defendant contends that he paid Plaintiff $9,000 contemporaneously with the conveyance and that he purchased the property from her with "no strings attached."[3] Defendant acknowledges that the parties discussed refinancing the house in Defendant's name but alleges that this conversation took place after Plaintiff had signed the quitclaim deed and that there were no agreements regarding Defendant subsequently owing Plaintiff money. Plaintiff admitted receiving the $9,000 payment and retaining the proceeds, but she insists that it was to reimburse her for the cost of preparing the property for sale and that it was not consideration for her equity in the property.[4]

In any event, Defendant never refinanced the debt, and both parties remained liable on the deed of trust. In September 2014, believing Defendant had destroyed the 2009 deed pursuant to their agreement, Plaintiff prepared to sell the property. Before she could do so, however, Defendant recorded the 2009 deed. When Plaintiff learned of this, she commenced this action alleging in pertinent part "that the only reason she signed the [2009] deed was to get her equity from the property. Defendant has failed to refinance and based thereon, Plaintiff alleges and avers that she was fraudulently induced to convey the property." The affirmative relief requested by Plaintiff in the Complaint reads as follows: "That Defendant be required to either pay her, her equity in said property, or that the Court Order the property sold and she be paid her equity."

Defendant filed an answer in which he admitted that the parties jointly purchased the property in 2005 but denied agreeing to refinance the debt or pay Plaintiff her equity in consideration for conveying the property to him in 2009. He admitted that he did not refinance the debt and that Plaintiff remains liable on the debt. Defendant did not assert any affirmative defenses, and the only relief Defendant sought was to "dismiss the Complaint."

The case was tried without a jury. At the beginning of trial, Defendant raised an objection to the admission of evidence regarding the parties' purported oral agreement based on the statute of frauds. The trial court overruled the objection and explained its rationale in the following exchange:

---

[3] Defendant introduced into evidence a cancelled check of $9,000 dated March 20, 2009, payable to Plaintiff with a memo notation "Payment on House in full 924 Hargrove Rd." The cancelled check reveals that it was endorsed by "Regina Tatum" and negotiated at Regions Bank on March 20, 2009. The check was written on the account of Ruth and Roger Moore, who are Defendant's parents, and it was signed by Ruth Moore.

[4] Plaintiff testified that, in anticipation of putting the house on the market, she purchased a new HVAC unit for the home and made repairs to the driveway.

**Trial Court:** The Court has reviewed the file . . . [Defendant], I don't see anywhere in here where [the statute of frauds] was specifically pled as a defense in your answer . . .

**Counsel for Defendant:** No, Your Honor. It's just an objection. I'm going to object based on [the statute of frauds]. I mean, I had just said, if she starts into any documents as it relates to anything, it's a four corners test.

**Trial Court**: All right. Pursuant to the—and of course, you can say continuing objection, that's fine.

[Tennessee case law] says the statute of frauds is waived if not raised as a defense in the pleading. . . . The other issue is, of course, the fact that even if the defense has been pled or an Appeals Court finds that it need not be specially, the Court is still going to have to hear evidence whether the theory of equitable estoppel would apply to this situation and be outside the statute of frauds.

So again, [Defendant], you can say continuing objection as it goes forward. But anyway, I'm going to let [Plaintiff] go forward with her testimony with regards to this issue.

Additionally, Defendant argued that Plaintiff failed to plead fraud with particularity as required by Rule 9.02 of Tennessee Rules of Civil Procedure; however, the trial court ruled that paragraph 5 of the complaint discussed fraud with sufficient particularity to satisfy the rules.[5]

Following a bench trial, the trial court issued its oral ruling, which reads as follows:

[Plaintiff] testified first. And basically most of the testimony [between the parties] . . . was pretty consistent. They were married years ago. They divorced in 2001; however, they continued to live together. They purchased the property after the divorce through a swap with some other property. Both of them were on the deed. Both of them were on the note. . . .

---

[5] Paragraph 5 of the complaint reads: "Plaintiff alleges and avers that she continues to be liable for the debt on the property. Further, Plaintiff alleges and avers that the only reason she signed the deed was to get her equity from the property. Defendant has failed to refinance and based thereon, Plaintiff alleges and avers that she was fraudulently induced to convey the property."

[Defendant] executed the property to [Plaintiff] solely in her name. . . . [Plaintiff] testified that . . . once [the property] got in her name, there was no agreement for her to do anything else with it. And then according to [Defendant], he moved out in 2006 sometime. Then in 2009, [Plaintiff] was ready to sell the house because she was getting married. [Defendant] called her up and said let me buy it, according to her testimony, and I will refinance it in my name solely. . . .

[Plaintiff] testified that she had spent $9,000 on expenses in trying to get the house ready to sell, which included a driveway, HVAC, and upkeep . . . on the home. According to her testimony, [Defendant] agreed that he would pay her that back. And then the deal went through. . . . [A]ccording to her testimony, [Defendant] called [Plaintiff] back and said he was unable to refinance, could he get a year to try to get it worked out.

[Plaintiff] testified that [the parties agreed] they would get an appraisal. He agreed to pay her equity based on that appraisal. She mentioned some figures, $30,000, $40,000, that type of thing. Again, she testified that [Defendant] said he would get it refinanced in a year, or otherwise the deal would be off on the situation.

Of course, that never happened as far as the refinancing. . . . [Plaintiff] testified that sometime in September [of 2014] . . . she told [Defendant] that she was just going to sell the property. And then the deed that was signed on March 20, 2009, was recorded on September 8, 2014. She testified that her credit was damaged because of all of this.
. . .

And then we had [Defendant] testify. Again, [he] reiterated the same facts for the most part as [Plaintiff], up until the time of March 2009, basically. And his testimony was that he was going to buy [Plaintiff] out for the $9,000 . . . He denied that he was supposed to pay her anymore money or that the refinancing was really part of the deal. He denied that. He claimed that she ruined his credit also. He did admit though that there were some discussions occurring about getting the mortgage out of [Plaintiff's] name on the day of the transfer and day of the money, and that the $9,000 was exchanged too.

In fact, I believe he said it was done—he gave her the check, and then the conversation [about the refinancing] was around that same time. But he stated that the $9,000 was for the purchase to buy her out, not for her expenses. . . .

There are several issues to cover here. One is the statute of frauds issue . . . because of the fact that it does involve real estate and there was no written agreement, [Defendant's] attorney raised that.

Of course, the Court already mentioned that on the pleadings [the statute of frauds is] not mentioned, and there was case law regarding that issue, with the waiver issue. However, assuming that there is a statute of frauds argument even, the Court is particularly persuaded by the case of *Thornton v. Marcum* . . . In that case, there was also a question about the statute of frauds. [T]he Court in that case ruled that . . . specific performance was awarded because of equitable estoppel.
. . .

In quoting that case . . . the Court of Appeals has previously recognized, the purpose of the statute of frauds is not to allow a party to avoid agreements he or she has made . . . It's long been recognized in our courts that strict application of the statute of frauds can lead to evils as undesirable as those it was designed to limit or prevent. Consequently, it should not be used to avoid contracts or to grant a privilege to a person to refuse to perform what he has agreed to do. In order to prevent such results, our courts have held that in some circumstances a party is estopped to assert the statute of frauds to avoid contractual undertakings in the interest of equity and fairness.

Estoppel, based on the principles of equity, may be applied in a number of situations, including to preclude an assertion of the statute of frauds.

Of course, . . . the Appellate Courts in this state consistently have refused to enforce an oral contract for the sale of land on the basis of part performance alone. And it is now a rule of property in this state that part performance of a parol contract for the sale of land will not take an agreement out of the statute of frauds.

The harshness of this rule has been mitigated by the application of the doctrine of equitable estoppel in exceptional cases, where to enforce the statute of frauds would make it an instrument of hardship and oppression.

The burden of proof, of course, is on the party seeking to invoke equitable estoppel. There is a compelling reason that the doctrine of equitable estoppel is necessary. The basis of equitable estoppel is that once a party acts or refrains from acting in such a way as to indicate an agreement, and another party reasonably relies on that indication of agreement, the first party cannot later assert a contrary position.

So when the Court looks at the evidence, the testimony . . . [Plaintiff] seems more credible on the discrepancies. The Court is particularly . . . concerned about this issue with the deed. You know there's a real strong circumstantial evidence there, that when the deed was signed on March 20, 2009, and it wasn't recorded until September 8, 2014, approximately five and a half years later, [this] lends the Court to the theory that [Plaintiff] 's testimony is probably more accurate than [Defendant] 's with regard to their agreement.

So the Court does find that equitable estoppel should apply in this case towards [Plaintiff's] favor. She's met her burden of proof on that point. Both of their names are still on the mortgage. Of course, the Court's job is to attempt to try to get to the truth. The Court believes [Plaintiff's] testimony is more to the truth than [Defendant's], at least when they diverged in 2009 on their testimony. . . .

So the Court is going to order that [Plaintiff's] name be put back on the deed, and both of you all own the property together . . . Court costs will be split equally.

Defendant appealed and raises the following issues: (1) whether the trial court erred by holding that the statute of frauds does not apply because of waiver or estoppel; (2) whether the complaint should be dismissed because Plaintiff failed to establish an essential element of her case for fraud or failed to plead fraud with particularity; (3) whether the trial court erred by adding Plaintiff's name to the deed; and (4) whether Defendant is entitled to an award of attorney fees on appeal and for the defense of the lawsuit in the chancery court. Further, Plaintiff raises the additional issue of whether the court erred in failing to find a breach of contract or, in the alternative, an invalid contract.

## STANDARD OF REVIEW

The factual findings of a trial court are accorded a presumption of correctness, and this court will not overturn those factual findings unless the evidence preponderates against them. *Phipps v. Phipps*, No. E2014-00922-COA-R3-CV, 2015 WL 335843, at * 3 (Tenn. Ct. App. Jan. 27, 2015) (citing Tenn. R. App. P. 13(d), *perm. app. denied*, (Tenn. May 15, 2015); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)). We review legal issues under "a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

ANALYSIS

At the outset, we must address the sufficiency of the trial court's findings of fact and conclusions of law under Rule 52.01 of the Tennessee Rules of Civil Procedure. Rule 52.01 requires that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01.[6] "We have previously stated that the requirement of detailed findings of fact and conclusions of law is 'not a mere technicality.'" *Burnett v. Burnett*, No. M2014-00833-COA-R3-CV, 2015 WL 5157489, at *4 (Tenn. Ct. App. Aug. 31, 2015) (quoting *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009)), *no perm. app. filed*. While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *In re Estate of Oakley*, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at *11 (Tenn. Ct. App. Feb. 10, 2015) (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013)), *no perm. app. filed*.

Findings of fact and conclusions of law that satisfy the Rule 52.01 requirement serve the following purposes:

> First, they facilitate appellate review by giving us "a clear understanding of the basis [for] a trial court's decision." [*Lovlace*, 418 S.W.3d at 34] Second, such findings illustrate precisely which issues the court is deciding so that the doctrines of collateral estoppel and res judicata may be applied to future cases. *Id.* at 35. Third, findings of fact and conclusions of law may eliminate the need for or limit the scope of an appeal by prompting the trial court to carefully articulate and apply the facts underlying the decision. *Id.*

*Burnett*, 2015 WL 5157489, at *4. Without these findings, appellate courts are "left to wonder on what basis the [trial] court reached its ultimate decision." *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. April 21, 2004).

For the foregoing reasons, we will now consider whether the trial court's findings of fact provide a clear understanding of the basis for its decision. *See Lovlace*, 418 S.W.3d at 34. Further, as is the case here, when there are multiple issues, we will

---

[6] Prior to July 1, 2009, trial courts were only required to make specific findings of fact and conclusions of law "upon request made by any party prior to the entry of judgment." *See Poole v. Union Planters Bank N.A.*, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010) (noting the amendment). However, the current version of Rule 52.01 requires the court to make these findings regardless of a request by either party. *Id.*

consider whether the findings of fact include as much of the subsidiary facts as is necessary "to disclose . . . the steps by which the trial court reached its ultimate conclusion on each factual issue." *In re Estate of Oakley*, 2015 WL 572747, at \*11 (quoting *Lovlace*, 418 S.W.3d at 35).

The trial court made a specific finding of fact concerning the credibility of the parties' testimony, stating from the bench: "[W]hen the Court looks at the evidence, the testimony . . . [Plaintiff] seems more credible on the discrepancies." This is a significant finding of fact because we give great weight to a trial court's determinations of credibility and weight of oral testimony. *See Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997) ("Because the trial judge is in a better position to weigh and evaluate the credibility of the witnesses who testify orally, we give great weight to the trial judge's findings on issues involving credibility of witnesses."). The trial court also provided a summary of the parties' testimony, much of which is quoted earlier in this opinion.

The credibility finding notwithstanding, the trial court did not make specific findings of fact concerning several material issues. Furthermore, the trial court's recitation of the parties' testimony does not identify the facts the court relied upon in reaching its ultimate decision, to put Plaintiff's name on the deed with that of Defendant. *See In re Estate of Oakley*, 2015 WL 572747, at \*11; *see also Lovlace*, 418 S.W.3d at 35. This omission is significant because a mere summary of testimony will not comply with Tenn. R. Civ. P. 52.01 if the summary does not provide a clear understanding of the basis for the trial court's decision. *See In re C.E.P.*, No. E2003-02410-COA-R3-PT, 2004 WL 2191040, at \*2 (Tenn. Ct. App. Sept. 29, 2004) ("In that judgment [terminating the father's parental rights], the trial court made very few, if any, findings of fact; instead, the judgment was replete with summaries of the parties' testimony."); *see also Tucker v. State*, No. 02C01-9707-CR-00249, 1998 WL 188850, at \*2 n.2 (Tenn. Crim. App. April 21, 1998), *perm. app. denied*, (Tenn. Jan. 11, 1999) ("A summary of testimony does not constitute findings of fact.").

Notably, the trial court did not make any findings or draw any legal conclusions regarding Plaintiff's cause of action, fraudulent inducement. To prevail on a claim of fraudulent inducement, the party asserting the claim has the burden of proving that the defendant:

> (1) made a false statement concerning a fact material to the transaction; (2) with knowledge of the statement's falsity or utter disregard for its truth; (3) with the intent of inducing reliance on the statement; (4) the statement was reasonably relied upon; and (5) an injury resulted from this reliance.

*Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011).

- 9 -

The essence of fraud is deception. *Lopez v. Taylor*, 195 S.W.3d 627, 634 (Tenn. Ct. App. 2005). "In its most general sense, fraud is a trick or artifice or other use of false information that induces a person to act in a way that he or she would not otherwise have acted." *Id.* (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 301 (Tenn. Ct. App. 2001)). Fraud occurs when a person intentionally misrepresents a material fact or intentionally produces a false impression in order to mislead another or to obtain an unfair advantage. *Id.* (citing *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001)).

In this case, the trial court did not make a specific finding that Defendant "made a false statement concerning a fact material" regarding the 2009 conveyance, and it did not state whether Defendant "fraudulently induced" Plaintiff to convey the property to him in 2009. Moreover, the trial court made no findings of fact concerning whether Defendant made an intentional misrepresentation "of an existing material fact," and whether Defendant had "knowledge of the representation's falsity" at the time the statement was made.[7] Furthermore, we note that the mere fact that Defendant did not refinance the property after Plaintiff conveyed it to him in March 2009 does not, standing alone, prove that he did not have a present intention of refinancing the loan when the statement was made. *See Houghland v. Security Alarms & Servs., Inc.*, 755 S.W.2d 769, 774 (Tenn. 1988) ("When a promise is made in good faith, and with the expectation of carrying it out, the fact that it subsequently is broken gives rise to no cause of action, either for deceit, or for equitable relief. Otherwise any breach of contract would call for such remedy."). We also note that the trial court made no findings concerning the fact that Defendant paid Plaintiff $9,000 contemporaneous with the March 2009 conveyance, which Plaintiff endorsed and admits retaining. Whether this was considered by the trial court is uncertain because the court made no findings concerning the relevance or significance of the $9,000 payment as it may pertain to the issue of fraud.

As for conclusions of law, the trial court did not identify a legal basis for the relief it granted Plaintiff. The legal principles identified by the trial court pertain to the statute of frauds, equitable estoppel, and the burden of proof.[8] As the trial court correctly noted,

---

[7] The elements of a claim for fraud include: (1) an intentional misrepresentation of an existing material fact, (2) knowledge of the representation's falsity, and (3) injury caused by reasonable reliance on the misrepresentation. *Lopez v. Taylor*, 195 S.W.3d 627, 634 (Tenn. Ct. App. 2005) (citations omitted).

[8] We acknowledge that to the extent Plaintiff's cause of action is fraud or fraudulent inducement, the statute of frauds is inapplicable. *In re Estate of Nelson*, No. W2006-00030-COA-R3-CV, 2007 WL 851265, at *16 (Tenn. Ct. App. Mar. 22, 2007) ("Under Tennessee law, however, the . . . statute of frauds appl[ies] only in suits for the breach or enforcement of a contract and [is] thus inapplicable to tort claims."); *Loew v. Gulf Coast Dev., Inc.*, No.01-A-019010CH00374, 1991 WL 220576, at *6 (Tenn. Ct. App. Nov. 1, 1991) ("[N]either the parol evidence rule nor the statute of frauds prevents the use of parol evidence to prove a fraudulent inducement to enter into a contract claim."); *Haynes v. Cumberland*

(continued…)

the statute of frauds was not raised as an affirmative defense, and such an omission may constitute a waiver. The trial court went on to note that equitable estoppel, which is an exception to the statute of frauds, may preclude a party from asserting the statute of frauds defense. Further, the trial court correctly stated that the burden of proof is on the party seeking to invoke equitable estoppel. The relevant portion of the trial court's reasoning reads as follows:

> So the Court does find that equitable estoppel should apply in this case towards [Plaintiff] 's favor. She's met her burden of proof on that point. Both of their names are still on the mortgage. Of course, the Court's job is to attempt to try to get to the truth. The Court believes [Plaintiff] 's testimony is more to the truth than [Defendant] 's, at least when they diverged in 2009 on their testimony. . . .
>
> So the Court is going to order that [Plaintiff] 's name be put back on the deed, and both of you all own the property together . . . Court costs will be split equally.

Based on the foregoing, the trial court concluded that the doctrine of equitable estoppel was applicable to this case; however, this conclusion does not provide a legal basis for the relief the court granted Plaintiff.

While equitable estoppel "is a shield a plaintiff can raise against the defense of the statute of frauds when the defendant has knowingly misrepresented a fact," it is not a basis for affirmative relief.[9] *See Seramur v. Life Care Centers of America, Inc.*, No. E2008-01364-COA-R3-CV, 2009 WL 890885, at *5 (Tenn. Ct. App. April 2, 2009) (noting the difference between equitable estoppel and doctrines like promissory estoppel). Instead, equitable estoppel operates as an exception to the statute of frauds, allowing a plaintiff to assert a claim under an otherwise unenforceable oral contract in certain instances. *See id.* Importantly, equitable estoppel is not a cause of action, and standing alone it will not entitle the party to affirmative relief. *See Laundries, Inc. v. Coinmach Corp.*, No. M2011-01336-COA-R3-CV, 2012 WL 982968, at *7 (Tenn. Ct.

---

*Builders, Inc.*, 546 S.W.2d 228, 231 (Tenn. Ct. App. 1976). Even if Plaintiff stated a claim for breach of contract or the parties tried the issue by consent, *see* Tenn. R. Civ. P. 15.02, the trial court did not make any findings about the existence of a contract or the content of its terms, and it is unclear how enforcing any of the parties' alleged oral agreements would result in both of them owning the property together.

[9] "[W]hile equitable estoppel has been a defense to the statute of frauds, promissory estoppel is not recognized as an exception to the statute of frauds. Thus, promissory estoppel is a sword, based on the failure to deliver on a promise, while equitable estoppel is a shield a plaintiff can raise against the defense of the statute of frauds when the defendant has knowingly misrepresented a fact." *Seramur v. Life Care Centers of Am., Inc.*, No. E2008-01364-COA-R3-CV, 2009 WL 890885, at *5 (Tenn. Ct. App. Apr. 2, 2009) (internal citation omitted).

App. Mar. 20, 2012) ("Although Coinmach set forth equitable estoppel as a claim entitling it to relief, the law in Tennessee is clear that equitable estoppel is available to protect a right but not to create one."). Once a party demonstrates that equitable estoppel applies, it must continue with its case and prove the elements of a cause of action – breach of contract, promissory estoppel, fraud, etc. – entitling it to the relief it seeks.

An example may be helpful. In *Thornton v. Marcum*, the plaintiff brought an action for specific performance based on an oral contract for the sale of land. No. E2007-01326-COA-R3-CV, 2008 WL 836368, at *1 (Tenn. Ct. App. Mar. 31, 2008). Although the statute of frauds would ordinarily prevent the plaintiff from enforcing that agreement, the trial court found that equitable estoppel applied and granted the plaintiff the remedy of specific performance of the parties' oral agreement. *See id.* at *1, 4. ("The Trial Court then observed that the Statute of Frauds would apply, but that the equitable estoppel exception would also apply, such that *the parties' agreement should be enforced* despite the fact the writing was never signed." (emphasis added)). This court affirmed. *See id.* at *4. The doctrine of equitable estoppel allowed the plaintiff in *Thornton* to bring suit to enforce an oral contract for the sale of land. *See id.* at *2-3. However, the plaintiff was only entitled to specific performance because of the agreement that the defendants agreed existed. *See id.* at *1, 3. Equitable estoppel allowed the trial court to enforce the agreement notwithstanding the statute of frauds, but the agreement itself was the basis for the relief the plaintiff was granted. *See id.* at *1, *3-4.

For the reasons identified above, the findings of fact and conclusions of law identified by the trial court do not disclose the steps by which the trial court reached its ultimate decision to put Plaintiff's name on the deed along with Defendant. *See Lovlace*, 418 S.W.3d at 34. This is particularly significant due to the fact Plaintiff only sought to set aside the 2009 quitclaim deed based on fraud. As noted earlier, Plaintiff was the sole owner of the property prior to executing the 2009 quitclaim deed to Defendant. Therefore, if the court had granted Plaintiff the relief she sought, the court would have set aside the 2009 quitclaim deed based on fraud, and she would be the sole owner of the property, not a co-owner with Defendant, which is the result of the trial court's judgment. Alternatively, if the trial court had denied the relief sought by Plaintiff, then Defendant would retain sole ownership of the property based on the 2009 quitclaim deed, which is the relief Defendant sought.

When a trial court's factual findings fail to satisfy the Rule 52.01 mandate, we may conduct a de novo review of the record to determine where the preponderance of the evidence lies or remand the case to the trial court with directions to issue sufficient findings and conclusions. *Lovlace*, 418 S.W.3d at 36. In this case we believe the better course is to remand.

Therefore, we vacate the judgment and remand to the trial court to make findings of fact and to state conclusions of law concerning the issues, claims, and defenses the trial court deems relevant and to render judgment as the trial court deems appropriate.

## IN CONCLUSION

The judgment of the trial court is vacated, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE