IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 7, 2012 Session

## THE PEOPLES BANK v. RAYMOND E. LACY

Appeal from the Chancery Court for Knox County
No. 179578-3    Hon. Michael W. Moyers, Chancellor

No. E2011-01489-COA-R3-CV-FILED-MAY 14, 2012

Plaintiff Bank brought this action to enforce a Loan Modification Agreement and promissory note.  The Bank alleged that defendant had breached the Agreement and it was entitled to judgment as a matter of law.  Defendant answered, arguing that the Bank had breached its contract with him and was not entitled to judgment.  The Bank moved for summary judgment and the Trial Court determined there was no disputed issue of material fact under the Loan Modification Agreement and the amount owed on the note, granted partial summary judgment to the Bank and ruled the partial summary judgment was final pursuant to Rule of Civil Procedure, Rule 54.02.  On appeal, we affirm the Trial Court's Judgment and remand for trial on defendant's Counter-Claim.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, J., joined.

Cynthia L. Wagner, Knoxville, Tennessee, for the appellant, Raymond E. Lacy.

John A. Lucas, Alcoa, Tennessee, for the appellee, The Peoples Bank.

### OPINION

Plaintiff, The Peoples Bank ("Bank"), filed a Complaint against defendant, Raymond Lacy, stating the Bank made several loans to Lacy, and that as of July 1, 2010, Lacy owed

$710,353.74 on the loans.  Further, that on July 1, 2010, the parties entered into a Loan Modification Agreement ("LMA") regarding the loans, and that defendant Lacy failed to make the payments in accordance with the LMA. Plaintiff sought a judgment of the stated amount against Lacy, plus interest, minus credit for any payments made.  The Bank filed the Affidavit of Charles Robinette, who stated that he was the CEO of the Bank, and that Lacy signed the LMA (attached as an Exhibit) and a modified promissory note (attached as an Exhibit) for $710,353.74.  He stated that Lacy failed to make the required $30,000.00 payment pursuant to the LMA, and he had tendered a check in that amount, which was dishonored due to insufficient funds.  Robinette stated that, pursuant to paragraph 10 of the LMA, the Bank had declared the modified promissory note immediately due and payable, and had delivered a letter notifying Lacy on January 24, 2011.

Robinette concluded that after giving Lacy credit for all payments and the appraised value of condo units 101 and 108 (described in paragraph 4(f) of the LMA), Lacy owed $519,063.29, plus per diem interest of $26.11 and attorney's fees.

The LMA states that a $30,000.00 payment was to be made on December 31, 2010, with no grace period for the payment.  The LMA also states that beginning July 1, 2010, Lacy would make monthly payments of $5,318.21 for 60 months.  The LMA states that "Bank agrees to consent to the reconfiguration of Unit 101 so as to correct the legal description of Unit 101. The Crown Court Deeds of Trust shall either (i) be amended to reflect the current configuration of Unit 101 so as to exclude that portion taken by the existing lobby area or (ii) be foreclosed with deference to the rights of the Crown Court Condominium owners and their association to utilize and maintain the said lobby area without interference or cost.  If the Bank is the successful bidder at such foreclosure sale the said lobby area shall be conveyed to said association without cost or compensation."  The LMA further states that, in the event of default, the Bank can declare the note immediately due and payable, and can file the Complaint and Agreed Judgment attached to the LMA.

Lacy had signed an Agreed Judgment which was attached to the LMA, which states that he waives his right to file any pleadings in defense of plaintiff's action, and agrees that plaintiff is entitled to the relief sought and consents to entry of the Agreed Judgment. The Agreed Judgment grants plaintiff a judgment for $710,353.74, minus credit for any payments made. The Modified Promissory Note is also attached, which contains the same requirements of Lacy explained above, and states that in the event of default, Lacy is also liable for all attorney's fees incurred by the Bank.

The Bank also attached a letter dated January 24, 2011, which was hand-delivered to Lacy, stating that since he failed to make the required $30,000.00 payment by December 31, 2010, he was in default under the LMA and the Bank was calling the note immediately due.

He was advised that he owed $519,063.00 after being given all credits, and the Bank then filed a Motion to Enter Consent Judgment, asking the Court to enter the Agreed Judgment which Lacy signed in accordance with the LMA.

Lacy filed a Response to the Motion, asserting that he had withdrawn his consent to the Agreed Judgment, that he had meritorious defenses to plaintiff's claims, and that plaintiff had breached their agreement by failing to convey the lobby to the condo association and by failing to provide a proper accounting, etc. He attached a letter dated December 16, 2010, which counsel for the Bank sent to his former counsel, stating that the Bank had recently learned that representations which Lacy made regarding the reconfiguration of Unit 101 were incorrect, and that the Bank would file suit regarding the misrepresentation unless Lacy signed a supplement to the LMA "that solves the problem without additional expense or other ramifications for either party." The proposed modification to the LMA basically omits the Bank's agreement to reconfigure Unit 101 and transfer the lobby area to the condo association.

Lacy also filed an Answer, Counterclaim and Third-Party Complaint, admitting that the parties entered into the LMA in settlement of their issues, and admitting that scheduled payments were not made, but asserting that such payment was excused based on "Plaintiff's assertion of a collateral interest in property which was to have been released or transferred to the Crown Court Condominium Association", whom Lacy attempted to add as a Third-Party Defendant. Lacy asserted that plaintiff had breached the LMA by failing to convey the lobby area and by failing to account for his payments and credits, and that plaintiff's breach caused "negotiations to cease toward a sale of the real property in which Plaintiff has a second deed of trust, specifically Defendant's office building at 249 N. Peters Rd., Knox County, Tennessee, and from which sale the Plaintiff would have been paid the balance of $300,000." Lacy further asserted that the Bank's action had caused the holder of the first deed of trust on that property to foreclose, and that the Bank was trying to obtain a monetary benefit by reselling the lobby area as part of Unit 101, and that the Bank wanted to avoid giving him credit for the difference in the fair market value of Unit 101 with the lobby area versus without the lobby area. He stated that he had informed plaintiff that the payment obligations could be met, but would not be without the Bank honoring its obligations.

In his Counterclaim he asserted the Bank had refused to transfer the lobby area to the condo association in violation of the LMA, had refused to provide him with a payoff or accounting of the payments/credits he had toward the balance, and had threatened him if he didn't sign the modification of the LMA. In his Third-Party Complaint against the condo association, he asserted the association should be a party because its rights would be adversely affected by the Bank's failure to convey the lobby.

The Bank then filed a Motion for Summary Judgment, asserting that there was no genuine issue of material fact regarding the fact that Lacy owed the bank $519,063.29 plus interest and attorney's fees. The Bank filed a Statement of Undisputed Material Facts, stating that Lacy and the Bank entered into an LMA, that Lacy signed an Agreed Judgment attached to same, that the Bank had declared the modified note immediately due and payable, and that as of January 24, 2011, the amount due under said note was $519,063.29, plus interest and late charges. The Bank also filed a Motion to Strike Answer, Counterclaim, and Third-Party Complaint, asserting that Lacy agreed in the Agreed Judgment to waive his right to file any pleadings in defense of this action.

Lacy filed his Affidavit, wherein he stated that the Bank had failed or refused to transfer the lobby area to the condo association as required by the LMA after it acquired title to that property. Lacy stated the Bank failed or refused to give him an accurate payoff. He stated that the Bank failed to give him credit for the $300,000.00 lump sum settlement amount for principal payments he had made. Lacy stated that the Bank's conduct adversely affected his ability to refinance his property, and that the Bank's counsel threatened him with a lawsuit if he did not sign a modification of the LMA which eliminated the Bank's obligation to sell the lobby area to the condo association.

He also filed a Response to the Statement of Undisputed Material Facts, wherein he admitted that he signed the Agreed Judgment, but stated that he had since withdrawn his consent, and stated that plaintiff could not declare him in default because plaintiff had breached the LMA. He stated that by refusing to transfer the lobby area to the association, the Bank had "in essence cost Defendant approximately $75,000."

The Bank filed an Affidavit of John Lucas, who stated that he was counsel for the Bank, and had hand-delivered a letter on December 16, 2010, to Lynn Tarpy, former counsel for Lacy, which was the letter Lacy attached to his Response. The Bank also filed an Affidavit of Tyler Chastain, who stated that on January 24, 2011, in representation of the Bank, he delivered a letter to Lacy via email which he attached as an Exhibit, and which gave Lacy the detailed accounting and payoff amount on the loans. The attached letter provided an accounting of payments made and credits given for the condos, plus late fees, interest, etc., in detail, showing how the figure of $519,063.29 was derived. Chastain also attached an email he received from Lacy in response, which states that Lacy had withdrawn his consent to the Agreed Judgment. John Lucas filed an Affidavit regarding his fees charged.

The Motion was heard on May 16, 2011, and the Bank's motion seeking summary judgment was granted in part. The Court found that Lacy was obligated to make a $30,000.00 payment on December 31, 2010, but failed to do so. The Court found that Lacy gave the Bank a check for $30,000.00, but it was dishonored due to insufficient funds. The

Court found that Lacy had signed an Agreed Judgment which was attached to the LMA, but Lacy withdrew his consent to the same before it was filed with the Court. The Court held that while it could not enforce the Agreed Judgment, it could still enforce the parties' contract, and that the undisputed material facts showed the Bank was entitled to summary judgment.

The Court found that the amount the Bank claimed that it was due, $519,063.29 plus interest, was not disputed by Lacy, and that Lacy had raised three defenses. The first defense was that the Bank had refused to transfer its interest in the lobby area to the condo association in breach of the LMA, but, the Court found that this was not a material fact because this benefitted the condo association and not Lacy. The Court found that Lacy also claimed that the Bank's failure to transfer the lobby area damaged him in the approximate amount of $75,000.00, but that the Bank agreed to give him credit for this amount.

The Court found that for his second defense, Lacy claimed the Bank had failed to give him a credit for principal payments he had made if, in the future, he decided to exercise his option to pre-pay the note with a payment of $300,000.00. The Court held that, while there apparently was a dispute between Lacy and the Bank about whether he was due those credits, it was not material to this issue because Lacy had not tendered such a pre-payment. The Court said that for the third defense, Lacy claimed that the Bank had failed to give him a proper accounting, but the Bank's letter dated January 24, 2011, did provide a proper accounting, and no accounting was required by the LMA. The Court thus stated that it had considered all of Lacy's defenses and had concluded there were no material facts in dispute to prevent the entry of a partial summary judgment, and entered judgment for the Bank for $444,063.29 plus interest and attorney's fees of $12,496.50. The Court declared the partial summary judgment to be final pursuant to Rule 54, and Lacy filed a Notice of Appeal.

The issues presented for review on appeal are:[1]

1. Whether the Trial Court erred in granting summary judgment without considering whether the Bank's breach excused Lacy's performance?

2. Whether the Trial Court erred in failing to take the facts alleged by Lacy as true, since he was the non-movant?

3. Whether the Trial Court erred in denying the Bank's motion to strike Lacy's pleadings, when he contractually agreed not to file any pleadings in defense of

_____

[1] Lacy raised a third issue is his initial Brief regarding whether the Court erred in not making detailed findings of undisputed facts, but he withdrew this issue in his Reply Brief.

this suit?

Lacy argues that the Trial Court erred in granting summary judgment to the Bank when he alleged that his payment under the LMA/modified note should be excused because the Bank failed to perform its end of the bargain, i.e. transferring the lobby area to the condo association. Lacy stated in his Affidavit the Bank had refused to transfer the lobby area to the condo association after it acquired title, and that this constituted a breach of their agreement. As Lacy argues in his second issue, this fact must be taken as true since Lacy was the non-movant, and it was undisputed by the Bank.[2] Lacy also argued that by failing to give him proper credit for the same, the Bank had cost him $75,000.00.

The Trial Court found this fact immaterial, because the Bank's promise to convey the lobby area to the condo association benefitted the condo association and not Lacy. The Trial Court impliedly found that Lacy's promise to pay was not excused by the Bank's failure to transfer the lobby to the condo association. Moreover, the Trial Court found the Bank's credit to Lacy of $75,000.00 for his claimed damages for the same would resolve any issue with regard to the lobby as between the Bank and Lacy.

As this Court has previously explained:

When third-party beneficiary contracts are involved, determining whether one party's continuing performance is excused by the other party's breach depends upon whether the performance of the non-breaching party is conditioned on the other party's performance. As Professor Corbin has explained:

> If the contract between the promisee and the promisor is a bilateral contract, the promise made for the benefit of a third party may be unconditional or it may be conditional on performance of the return promise or tender thereof. If unconditional, a breach of duty by the promisee will not affect the right of the beneficiary against the promisor. If conditional and dependent, on the other hand, a failure by the promisee to perform his part may terminate the duty of performance by the promisor.

9 Arthur Linton Corbin, Corbin on Contracts § 819, at 246–47 (Interim ed. 1979) (Corbin on Contracts).

---

[2] Counsel for the Bank argued at oral argument that they made a statement in their Answer claiming to have worked this out with the condo association - however, their Answer does not appear in the record, and there is nothing in the record via Affidavit or otherwise to dispute Lacy's assertion regarding the lobby.

*Lopez v. Taylor*, 195 S.W.3d 627, 634 (Tenn. Ct. App. 2005).

While this case does not involve an action where the third-party beneficiary is seeking to enforce the contract, the same principles apply. If Lacy's duty to pay was conditional upon the Bank's promise to transfer the lobby area to the condo association, then the Bank's failure to do so could have excused Lacy's duty to pay.

It has been further explained, however, that:

[m]odern courts, and the Restatement (Second) of Contracts, recognize that something more than a mere default is ordinarily necessary to excuse the other party's performance in the typical situation, subscribing to the general rule that where the performance of one party is due before that of the other party, such as when the former party's performance requires a period of time, an uncured failure of performance by the former can suspend or discharge the latter's duty of performance only if the failure is material or substantial. Thus, if the prior breach of such a contract was slight or minor, as opposed to material or substantial, the nonbreaching party is not relieved of his or her duty of performance, although he or she may recover damages for the breach. In what is essentially a variation on the above rule, some courts have indicated that a breach of contract which is only "partial," as opposed to "total," will not relieve the other party from his or her obligation to perform. Similarly, good-faith differences between the parties as to the scope of their contractual undertakings do not relieve either party of his or her duty of performance.

14 Williston on Contracts § 43:5 (4th ed.).

In this case, the Bank's promise to transfer the lobby area to the condo association "without cost or compensation" does not have a timeframe attached, and is contained within the section of the LMA entitled "Condition of Extension and Modification", which otherwise deals exclusively with Lacy's duties under the LMA. The Bank's promise is contained within a paragraph which details that Lacy is to complete construction on Unit 108 within 30 days, and what that is to include. Before this paragraph, the LMA unequivocally states that Lacy is to make the payment of $30,000.00 by December 31, 2010, and remain current on his other note payments, and that "Bank's agreement to modify and extend the term of each of the [subject notes] shall be subject to timely satisfaction of each of the . . . conditions" enumerated. The contract provides that the Bank's failure to transfer the lobby to the condo association before December 31, 2010, would not excuse Lacy's performance of the duty to make the $30,000.00 payment by that date, which he failed to do.

As to any damages claimed by Lacy for the alleged breach of promise by the Bank,

he was given credit of $75,000.00 for the same, which is the amount he claimed (but provided no support for) and the Trial Court agreed to allow him to proceed on his counterclaim. Accordingly, there was no remaining impediment for the Court's entry of partial summary judgment on the issue of whether the note could properly be declared in default and whether the Bank could receive judgment for the remainder of what was undisputedly owed by Lacy.

Next, Lacy argued at the trial court level (although he does not develop this argument in his Brief) that the Bank failed to give him a proper accounting regarding what he owed and what credits he had received. Lacy did not dispute that he received the letter detailing the accounting, nor the calculations contained therein. Moreover, the Trial Court found, this fact was also immaterial to the summary judgment, because the LMA did not provide for further accounting.

Finally, Lacy argues that the Bank failed to give him proper credit for principal payments he had made toward the prepayment provision contained in paragraph 4(h) of the LMA, which states that he can prepay and obtain a release of the note if within two years, he tenders payment of $300,000.00. The agreement states that if Lacy retains Units 101 and 108, any amount he receives above the appraisal value shall be paid to the Bank and credited toward this $300,000.00, but the $30,000.00 payment in paragraph 3(a) shall not be applied to the $300,000.00. There is no further discussion of other amounts to be applied toward the $300,000.00.

As the Trial Court acknowledged, there is a dispute between the parties regarding whether other principal payments made by Lacy should be applied toward this $300,000.00 prepayment amount, but this was not material to the summary judgment, as there was no showing that Lacy had tendered or attempted to tender the prepayment amount. Lacy did not allege in his Affidavit that he had ever tendered such a payment, but merely states that "Plaintiff . . . asserted the entitlement to the $300,000 lump sum settlement payment even though under the terms of the Loan Modification Agreement principal payments made by me were to have been credited toward said settlement amount." Since Lacy did not tender nor attempt to tender said prepayment amount, it is not a material fact to deny the partial summary judgment. We conclude that Lacy's issues regarding summary judgment are without merit.

The Bank asserts that the Trial Court erred in failing to grant its motion seeking to strike Lacy's Answer and Counterclaim, because Lacy agreed in the Agreed Judgment attached to the LMA that he would not file any pleadings in opposition to or defense of this lawsuit. As the Trial Court found, however, Lacy withdrew his consent to the Agreed Judgment before it was ever filed with or entered by the Court, and as such, it cannot be

enforced.  *See Harbour v. Brown*, 732 S.W.2d 598 (Tenn. 1987).

But the Bank argues that the underlying agreement not to file responsive pleadings, can still be enforced as a contractual agreement even if the Agreed Judgment cannot be entered.  As the Supreme Court stated in *Harbour*, "[t]his is not to say that the compromise agreement may not be a binding contract, subject to being enforced as other contracts, but only that the court may not enter judgment based on the compromise agreement, when it has notice that one of the parties is no longer consenting to the agreement for whatever reason." *Id*. at 600.  But where as here, one party is claiming a breach of their agreement by the party who is seeking to enforce the same, as stated earlier, while this may not excuse the party's performance, he may still be entitled to damages or other relief for that breach.  Accordingly, the Trial Court properly allowed Lacy's counterclaim to stand.

The Summary Judgment granted by the Trial Court is affirmed, and the case is remanded for a hearing regarding Lacy's counterclaim.  The cost of the appeal is assessed to Raymond E. Lacy.

_____
HERSCHEL PICKENS FRANKS, P.J.