FILED
03/31/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 4, 2019 Session

## JEFFREY GLENN MITCHELL v. CAROL ANN THOMAS MITCHELL

**Appeal from the General Sessions Court for Blount County**
**No. S-17664     William R. Brewer, Jr., Judge**

_____

### No. E2019-00759-COA-R3-CV

_____

This is the second appeal in this post-divorce action involving the interpretation of the parties' marital dissolution agreement and allegations of contempt for failure to comply with the same. We remanded the case to the trial court for submission of additional findings of fact and conclusions of law. The husband appeals the trial court's opinion on remand. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II and CARMA DENNIS MCGEE, JJ., joined.

Elizabeth Sitgreaves, Brentwood, Tennessee, for the appellant, Jeffrey Glenn Mitchell.

Craig L. Garrett, Maryville, Tennessee, for the appellee, Carol Ann Thomas Mitchell.

**OPINION**

### I.     BACKGROUND

A review of the record reveals that the facts and issues on appeal remain the same. Accordingly, we will recount our earlier opinion and then address the issues now properly before this court. The facts and procedural background pertinent to this appeal are as follows:

Jeffrey Glenn Mitchell ("Husband") and Carol Ann Thomas Mitchell ("Wife") were divorced on October 28, 2011, by order of the trial court. They had two minor children of the marriage, R.K.M., who was fifteen years of age at the time of the divorce, and D.T.M., who was eleven

years old (collectively, "the Children"). Husband's primary source of income was from Benefit Consulting Services, Inc. ("BCS"), a company which was owned solely by Husband following the parties' divorce. The parties' MDA, which was incorporated into the trial court's divorce judgment, included the following relevant provisions:

> **CHILD SUPPORT:** The provisions of the Permanent Parenting Plan are hereby incorporated herein as if fully and specifically set out. Said Plan is adopted as Exhibit 1.

> * * *

> **PROPERTY DIVISION / CHILD SUPPORT:** The Husband shall pay to the Wife a combination of property division and child support that will be paid in three levels as set out below. All payments shall cease upon the death of either party. All property division payments to the Wife shall be non-deductible to the Husband, nor considered income to the Wife for federal income tax purposes. Should the Wife remarry or cohabitate with another individual who is not a family member, the Husband's obligation for the payment of property division portion shall terminate.

> **Stage 1:** Based upon the Husband's current yearly income of $250,000 and the Wife's ability to earn is $48,000 per year and that those amounts shall be used for child support worksheet calculation purposes now through the end of Stage 2, the date the parties['] younger minor child [D.T.M.], attains the age of majority and there is no longer a child support obligation for him, which is anticipated to occur on May 31, 2018, the date of his graduation from high school [after] he will have attained the age of eighteen.

> As per the attached child support worksheets, Stage l, shall be from the date of the entry of the Final Decree of Divorce until May 31, 2014, when the parties' daughter, [R.K.M.] attains the age of majority and there is no longer a child support obligation for her. Husband shall pay a total amount of 28.8% ($6,000 / $250,000) of his gross annual income to the Wife, not to exceed a combination of child support and property division of $6,000.00 per month, which by way of

current example would represent $2,082.00 per month child support and $3,918.00 per month as property division.

**Stage 2:** Beginning June 1, 2014, and continuing until the parties' son, [D.T.M.], attains the age of majority on May 31, 2018, and there is no longer a child support obligation for him, the Husband's monthly obligation of property division / child support shall be reduced to 24.0% of his annual income not to exceed $5,000.00 per month. By way of example this would represent a monthly obligation of child support of $1,624.00 (see child support worksheet attached hereto) and a monthly obligation of $3,376.00 as property division beginning June 1, 2014, and continuing until May 31, 2018, making a total payment of $5,000.00.

**Stage 3:** Beginning June 1, 2018, and continuing until May 31, 2021, the Husband's monthly obligation of property division shall be reduced to 13.2% of his annual income not to exceed $2,750.00 per month for a total of 36 months.

(Paragraph numbering omitted.)

The parties had also entered into an agreed permanent parenting plan ("PPP"), which provided that reasonable health insurance for the Children would be maintained by Husband and that any reasonable and necessary medical expenses not covered by health insurance would be paid by Husband. The parties subsequently reached an agreement that despite the health insurance provision of the PPP, Wife would provide health insurance for the Children through her employment, with Husband reimbursing her the cost of such health insurance. Both the PPP and child support worksheet demonstrate that Husband's initial child support obligation was $2,082.00 for both of the Children.

On January 10, 2014, Husband filed a "Motion to Clarify, Amend, Modify, and/or Void Final Judgment for Divorce as to Child Support Obligation and Property Division." Husband argued in his motion that a substantial change of circumstance had occurred because his income had decreased. Husband averred that the decrease of his income was not foreseeable or voluntary and that he was accordingly entitled to a downward modification of his child support obligation. Husband further contended that the MDA was "deficient, ambiguous, and contrary to the

- 3 -

requirements of the Tennessee Income Shares Guidelines and Tenn. Comp. R. & Regs., Chapter 1240-2-4-.04(3)(a)" because it purportedly comingled the property division and child support obligations, was determined based on a percentage of Husband's income, and failed to designate how much of that amount would be categorized as child support. Husband argued that the trial court "must state a specific dollar amount [of child support], not a percentage of Adjusted Gross Income."

In March 2014, Wife filed an answer in response to Husband's motion, denying Husband's averment that a substantial change in circumstance existed and his assertion that the MDA was deficient, ambiguous, and contrary to Tennessee law. Wife included in her response a counter-motion, requesting that the trial court find Husband to be in contempt of court due to his noncompliance with certain requirements in the MDA. Specifically, Wife alleged that Husband had failed to maintain a "vacation fund account for the benefit of [Wife]," as required by the MDA, and that none of the conditions that would terminate Husband's obligation to maintain the fund had occurred. According to Wife, Husband had also "unilaterally reduced his $6,000.00 a month payment which constituted child support of $2,082.00 and property division payment of $3,918.00 to the sum of $4,000.00" and the reduction was in violation of the trial court's order. Wife further requested an award of attorney's fees and associated expenses.

On December 16, 2014, Wife filed a motion to dismiss, which the trial court subsequently granted due to Husband's failure to prosecute his motion and respond to discovery requests. Wife subsequently filed an amended counter-motion on September 16, 2016, which included allegations of another violation by Husband of the court's order. Specifically, Wife alleged that Husband was required to pay all medical expenses of the Children pursuant to the PPP and that he had "failed and refused to pay the medical bills." According to Wife, she had also paid for some of the Children's medical bills and despite her requests, Husband had "failed and refused to reimburse" her. In the amended counter-motion, Wife again requested that Husband "be held in willful contempt" and that she be awarded her attorney's fees and court costs.

On September 19, 2016, Husband filed a motion, alleging that Wife's interpretation of the MDA was flawed and requesting an award of attorney's fees and costs that Husband had incurred defending against Wife's claims. All pending matters were heard during a hearing on

September 20, 2016, which included testimony from Husband and Wife. Following the hearing, the trial court took the matter under advisement, requesting that the parties file respective proposed findings of fact and conclusions of law. The trial court entered an order on December 16, 2016, adopting verbatim those findings and conclusions prepared by Wife.

The trial court found, as part of the findings of fact and conclusions of law adopted in its December 16, 2016 order, that Husband was in willful contempt of court for his "failure to maintain the vacation fund, failure to pay the son's medical bills, and failure to make the payments owed" pursuant to the Property Division/Child Support section of the MDA. Also as part of the adopted findings and conclusions, the trial court awarded to Wife a judgment against Husband totaling $82,156.45; which included $73,763.00 in unpaid property division and child support payments; $2,093.97 for payment of the Children's medical bills; $2,400.00 for unpaid payments to the vacation fund account, and $3,899.48 owed to Wife for reimbursement of the Children's health insurance costs.

Following entry of the trial court's order on December 16, 2016, Wife filed a motion on January 13, 2017, requesting that she be awarded attorney's fees incurred in the matter. The trial court subsequently granted Wife's request for attorney's fees in the amount of $14,675.00 in its final order entered on May 26, 2017. The final order reflects that following the trial but before the final order was entered, Husband had paid to Wife the money he owed toward the vacation fund account and had paid D.T.M.'s outstanding medical bills. Husband timely appealed.

*Mitchell v. Mitchell*, No. E201700100COAR3CV, 2019 WL 81594, at *1-3 (Tenn. Ct. App. Jan. 3, 2019).

In the first appeal, we concluded that we were unable to determine whether the adopted findings of fact and conclusions of law represented the trial court's own independent analysis and judgment and not that of Wife or her counsel. We vacated the opinion of the court and remanded for entry of findings of fact and conclusions of law. Upon remand, the trial court issued extensive findings in support of its assertion that Husband's testimony was false and misleading and that he had manipulated his income to Wife's detriment. Based upon these findings, the court concluded that Husband was intentionally under employed and had failed to operate in good faith while carrying out his part of the MDA. The court again adopted Wife's proposed findings of fact and conclusions of law as amended. This appeal followed.

## II.    ISSUES

We have consolidated and restated the issues on appeal as follows:

A.      Whether the trial court erred in its interpretation of the MDA.

B.      Whether the trial court erred by finding Husband to be in willful contempt of court and in calculating the amounts owed by Husband pursuant to the MDA.

C.      Whether the trial court erred in finding that Husband was voluntarily under employed and failed to act in good faith.

D.      Whether the trial court erred in awarding to Wife her attorney's fees, and whether Husband should be awarded his attorney's fees.

E.      Whether Wife is entitled to attorney's fees on appeal.

## III.    STANDARD OF REVIEW

The trial court's findings of fact are reviewed de novo with a presumption of correctness unless the evidence preponderates against the trial court's findings. Tenn. R. App. P. 13(d); *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). The trial court's conclusions of law, however, are reviewed de novo with no presumption of correctness. *Id.*; *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Marital dissolution agreements are contracts and are to be treated as such. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001); *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561-62 (Tenn. Ct. App. 2003). The interpretation of contracts is a matter of law. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006).

## IV.    DISCUSSION

### A. & B.

Husband argues that the court erred in its interpretation of the MDA insofar as holding that his monthly obligation was a set amount and not modifiable on an annual basis. He acknowledges that the language supports a finding that his income was set at $250,000 for purposes of child support[1] but that a specific dollar amount was not specified for property division purposes but was instead subject to yearly review. Wife

---

[1] Husband does not raise issues pertaining to his child support obligation on appeal.

responds that the court did not err in its interpretation of the MDA, which simply set a ceiling for Husband's financial obligations. She explains that they anticipated that his property division obligations would decrease in the event that his child support obligation increased, not that his income would be calculated anew each year or that he could submit a separate income figure for property division purposes.

This court has provided the following guidance in resolving a dispute concerning the interpretation of a contract:

> [O]ur task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, Corbin on Contracts, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 Am. Jur. 2d, Contracts, § 245).

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Jan. 30, 2006). A court will not look beyond the four corners of the document to determine the parties' intent when the contract is unambiguous. *Williams v. Larry Stoves and Lincoln Mercury, Inc.*, No. M2014-00004-COA-R3-CV, 2014 WL 5308634, at *4 (Tenn. Ct. App. Oct. 15, 2014). An ambiguity "does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions. Rather, a contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001) (internal quotation marks and citations omitted).

The provisions at issue, as previously provided, provide as follows:

**PROPERTY DIVISION / CHILD SUPPORT:** The Husband shall pay to the Wife a combination of property division and child support that will be paid in three levels as set out below[:]

**Stage 1:** Based upon the Husband's current yearly income of $250,000 and the Wife's ability to earn is $48,000 per year and that those amounts shall be used for child support worksheet calculation purposes now through the end of Stage 2, the date the parties['] younger minor child [D.T.M.], attains the age of majority and there is no longer a child support obligation for him, which is anticipated to occur on May 31, 2018, the date of his graduation from high school [after] he will have attained the age of eighteen.

As per the attached child support worksheets, Stage l, shall be from the date of the entry of the Final Decree of Divorce until May 31, 2014, when the parties' daughter, [R.K.M.] attains the age of majority and there is no longer a child support obligation for her. Husband shall pay a total amount of 28.8% ($6,000 / $250,000) of his gross annual income to the Wife, not to exceed a combination of child support and property division of $6,000.00 per month, which by way of current example would represent $2,082.00 per month child support and $3,918.00 per month as property division.

**Stage 2:** Beginning June 1, 2014, and continuing until the parties' son, [D.T.M.], attains the age of majority on May 31, 2018, and there is no longer a child support obligation for him, the Husband's monthly obligation of property division / child support shall be reduced to 24.0% of his annual income not to exceed $5,000.00 per month. By way of example this would represent a monthly obligation of child support of $1,624.00 (see child support worksheet attached hereto) and a monthly obligation of $3,376.00 as property division beginning June 1, 2014, and continuing until May 31, 2018, making a total payment of $5,000.00.

**Stage 3:** Beginning June 1, 2018, and continuing until May 31, 2021, the Husband's monthly obligation of property division shall be reduced to 13.2% of his annual income not to exceed $2,750.00 per month for a total of 36 months.

A fair reading of the contract supports the trial court's holding of Husband in contempt for failure to pay pursuant to the terms of the MDA, calculated with an income of $250,000. The legislature has provided that "[w]hen a court having jurisdiction determines child support pursuant to the Tennessee child support guidelines, based on

either the actual income or the court's findings of an obligor's ability to earn income, the final child support order shall create an inference in any subsequent proceeding that the obligor has the ability to pay the ordered amount until such time as the obligor files an application with the court to modify the ordered amount." Tenn. Code Ann. § 36-5-101(a)(8). We acknowledge Husband's argument that the same provisions do not necessarily apply when calculating income for purposes of a property division obligation. However, the contract specifically set his income at $250,000 through the end of Stage 2 and did not provide guidelines for a yearly income evaluation. We will not read such a term into the contract. Accordingly, we affirm the court's interpretation of the contract, holding of Husband in contempt, and calculation of his support arrearages pursuant to the terms of the MDA.

C.

Husband also objects to the court's finding of voluntary under employment and violation of the covenant of good faith and fair dealing as applied to his property division obligations. He reasons that a finding of voluntary under employment is only utilized for imputing income under the child support guidelines. Further, the MDA did not require him to maintain his specific employment, much less a specific gross annual income. While voluntary under employment may be a term specific in child support disputes, Husband was subject to the covenant of good faith and fair dealing applicable in all contracts. *See Long v. McAllister-Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006). ("A marital dissolution agreement, like any other contract, contains an implied covenant of good faith and fair dealing both in the performance and in the interpretation of the contract."). The covenant has been explained as follows:

> While this covenant does not create new contractual rights or obligations, it protects the parties' reasonable expectations as well as their right to receive the benefits of their agreement. *Lopez v. Taylor*, 195 S.W.3d 627, 633 (Tenn. Ct. App. 2005). The covenant imposes a duty on the contracting parties to do nothing that will impair or destroy the rights of the other party to receive the benefits of the contract. *Elliott v. Elliott*, 149 S.W.3d at 85.

*Id.* Here, the court found that Husband manipulated his income to Wife's detriment and was voluntarily under employed. Our review of the record supports this finding. Such behavior is a violation of the covenant of good faith and fair dealing, regardless of whether issues of child support are before the court. Accordingly, we affirm the court's findings on these issues and ultimate decision to enter judgment against Husband for failure to comply with the provisions of the MDA.

## D. & E.

Wife asks this court to affirm the trial court's award of attorney fees pursuant to the MDA. She also requests attorney fees on appeal and again requests attorney fees incurred in the first appeal.[2] Husband responds with his own request for attorney fees at trial and on appeal.

Tennessee follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). The language of a fee provision in a marital dissolution agreement is subject to the usual rules of contract interpretation, and the award of such fees is limited to the situation agreed to by the parties. *Segneri v. Miller*, No. M2003-01014-COA-R3-CV, 2004 WL 2357996, at \*6 (Tenn. Ct. App. Oct. 19, 2004). The attorney fee provision in the MDA at issue provides as follows:

> In the event that it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement or to defend unsubstantiated claims hereunder, in addition to any other relief to which the enforcing party may be adjudged entitled, he or she shall also be entitled to *request* a judgment for reasonable expenses, including attorney's fees incurred in prosecuting or defending this action.

(Emphasis added.).

The MDA presented here simply provides that the prevailing party is only entitled to "request" such fees, thereby establishing that the *award* of such fees remained within the discretion of the trial court. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). We affirm the trial court's award of attorney fees to Wife in deference to the court's discretion in such matters pursuant to the terms of the MDA and the court's finding of contempt. Exercising our discretion, we respectfully deny the competing requests for attorney fees on appeal, incurred in both the first and second appeal.

---

[2] Wife raised the issue of attorney fees in the first appeal. We rendered the issue moot as a result of our decision to vacate the order and remand for further findings. *Mitchell v. Mitchell*, No. E2017-00100-COA-R3-CV, 2019 WL 81594, at \*7 (Tenn. Ct. App. January 3, 2019).

## V.    CONCLUSION

We affirm the decision of the trial court and remand for such further proceedings as may be necessary.  Costs of the appeal are taxed to the appellant, Jeffrey Glenn Mitchell.

 

_____

JOHN W. McCLARTY, JUDGE